PRESENT: Kinser, C.J., Lemons, Goodwyn, Millette, and Mims, JJ., and Carrico and Koontz, S.JJ.[*]

JOSEPH C. LEE                                    OPINION BY
                                          JUSTICE WILLIAM C. MIMS
v.   Record No. 092385                        March 4, 2011

CITY OF NORFOLK

           FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                    Junius P. Fulton, III, Judge

     In this appeal, we review the circuit court's dismissal, upon demurrer and pleas in bar, of a property owner's claims for compensation and damages following the demolition of a residential building by the City of Norfolk.

                              FACTS

     The circuit court dismissed the case below on demurrer and pleas in bar without taking evidence. "Where no evidence is taken in support of a plea in bar, the trial court, and the appellate court upon review, consider solely the pleadings in resolving the issue presented." Lostrangio v. Laingford, 261 Va. 495, 497, 544 S.E.2d 357, 358 (2001). The facts as stated in the plaintiff's pleadings are taken as true for the purpose of resolving the special plea. Id.

     Joseph C. Lee ("Lee") owned a duplex ("the building") in Norfolk. On June 2, 2006, the City of Norfolk ("the City")

_____

[*] Justice Koontz presided and participated in the hearing and decision of this case prior to the effective date of his retirement on February 1, 2011; Justice Kinser was sworn in as Chief Justice on February 1, 2011.

issued a building permit to Lee to repair damage caused by an accidental fire. On August 25, 2006, the permit was revised to include authorization for elevation of the building out of a floodplain to prevent water intrusion.

On or about September 5, 2006, while repairs were ongoing, the City's Occupancy Inspector inspected the building. According to the City, Lee's duplex was observed with most of the roof missing, an unsecured roof gable, shattered brickwork (some of which was falling off), glass windows pulled loose from their frames, rotten portions along the base of certain walls, some walls raised off the foundation with improperly used jacks, dangling electric wires at the point where the service was connected to the house, and piles of dangerous debris strewn about.

The next day, Lee received a telephone call from a City employee who informed him that his building permits had been revoked because he had exceeded the "50 percent rule." This rule limits repairs to non-conforming structures, such as Lee's duplex, to 50% of the value of the structure. Lee never was informed in writing that his permits had been revoked.

On September 20, 2006, Lee received a letter by certified mail, dated September 12, 2006, from James A. Rogers ("Rogers"), the Acting Chief of the Division of Neighborhood

2

Preservation for the City.  The letter informed Lee that the building

> was inspected and found to be open providing a
> haven for undesirable & criminal activities.
> THE STRUCTURE HAS BEEN RENDERED UNSAFE BY
> ATTEMPTED REPAIRS.  The property is in violation
> of health and safety regulations of Section
> 130.0 of the Virginia Uniform Statewide Building
> Code (USBC) and Article I, Chapter 27, Section
> 27-8 of the Code of the City of Norfolk.
> Therefore it has been declared UNSAFE AND A
> PUBLIC NUISANCE.

Rogers directed Lee to board and secure the property by September 20 and to have the building demolished by September 27.  Rogers then stated: "If there are sound reasons why this limit cannot be met, or you are not in agreement with the interpretation or application of the code, you must contact me immediately."  Later in the letter, Rogers outlined Lee's right of appeal:

> Any owner who is aggrieved by the Code
> Official's decision concerning the application
> of the USBC or refusal to grant modification to
> the provisions of the USBC may appeal that
> decision pursuant to Section 106.5 of the USBC.
> The appeal must be filed with the appropriate
> authority in writing, with a filing fee within
> twenty-one (21) days of this notice.

Lee promptly retained counsel.  One week later, on September 27, Lee and his attorney met with the Assistant City Attorney and several other City employees to discuss the issues raised in the September 12 letter.  At the meeting, Lee agreed to make certain changes requested by the City to alleviate the

3

safety concerns. The record does not indicate any questions or discussions by Lee or his attorney at this meeting or subsequently regarding his right to appeal the public nuisance finding or the demolition directive.

Following the September 27 meeting, Lee made some efforts to comply with the City's requirements. However, the City deemed them to be unsatisfactory. Lee also hired a structural engineer to evaluate the building, who filed a report with the City on November 10, 2006. The report concluded that the building was not in danger of immediate collapse and recommended the reissuance of the permits. The City requested additional information from Lee's engineer, who declined to provide it or work further on the matter. Lee then hired a second engineer, who provided some but not all requested information to the City six weeks after the initial engineer's report, on December 21, 2006.

However, on December 19, 2006, Rogers had mailed another letter to Lee. In it, Rogers reiterated the deficiencies in Lee's proposed engineering plan and informed Lee that "[t]he extensions to date have expired, and no further extensions will be granted. The City of Norfolk will be demolishing the structure under the emergency provisions of the Uniform Statewide Building Code." He explained that "[t]his action is a continuum of the certified letter to you dated September 12,

4

2006, declaring the structure UNSAFE AND A PUBLIC NUISANCE."
The City demolished the building 17 days later, 107 days after
Lee received the initial letter that gave notice it was a
public nuisance, directed the demolition, and outlined the
right of appeal.

During those 107 days, Lee did not file an appeal. The
record does not reflect any inquiries or other communications
from him or his attorney regarding his right to do so.

PROCEEDINGS BELOW

Lee filed suit against the City in the Circuit Court of
the City of Norfolk. His complaint consisted of three counts.
First, he claimed deprivation of his federal due process rights
under 42 U.S.C. § 1983 (2006 & Supp. I 2007). Second, he
brought a state claim for violation of his due process rights
under Article I, Section 11 of the Constitution of Virginia,
alleging that the City had taken his property for public use
without just compensation by inverse condemnation. Third, he
brought a common law claim sounding in tort for property
damages.

The City demurred to count one and filed pleas in bar to
counts two and three. In its demurrer, the City argued that
"the availability of the inverse condemnation procedure, per
se, provide[d] Lee with due process of law in satisfaction of
the U.S. Constitution." In its pleas in bar, the City argued

5

that Lee did not have a viable inverse condemnation claim because he never appealed the City's determination that the property was a nuisance.  On count three, the City argued that Lee did not give timely notice to the City as required by Code § 15.2-209.  It further argued that, under the doctrine of sovereign immunity, the City is immune from liability for all acts or omissions made by City personnel engaged in the governmental function.  The circuit court sustained the demurrer to count one with leave to amend, and deferred judgment on the inverse condemnation and property damage counts so the record could be more fully developed.

The court's order also stated that "[t]he demurrer is sustained with respect to . . . count two of the Complaint." Since the Court in the same ruling deferred a ruling on the inverse condemnation claim in count two, apparently the court interpreted count two as including a distinct state due process claim in addition to the inverse condemnation claim and therefore sustained the demurrer as to both federal and state due process claims based on the availability of the inverse condemnation remedy.

Lee subsequently filed an amended complaint, alleging federal claims in count one that the City violated 42 U.S.C. § 1983, and his "constitutionally guaranteed property and civil rights."  He stated that the City's conduct violated both due

6

process and equal protection guarantees: it was "arbitrary, unreasonable, irrational, and without legitimate basis or purpose" and it "intentionally regulated and treated the subject property differently from other similarly-situated properties . . . without legitimate reason or rational basis." Specifically, he pointed to his active negotiations with the City and the engineering reports that concluded the property was not in danger of collapse.

In his amended complaint, Lee alleged numerous defects with the notice provided by the September 12, 2006 letter, as follows: the letter cited a provision of law that did not exist and omitted required elements of proper notice; the letter or a similar notice was not sent to the lienholder on the property and the City did not publish notice in a newspaper of general circulation once a week for two consecutive weeks, both as required by Code § 15.2-906; and the letter did not contain a statement requiring the person receiving it to accept or reject the terms of the notice as is required by § 118.3 of the Virginia Construction Code.

Lee did not modify his claims for inverse condemnation or property damage, except to include the Constitution of the United States as additional authority for his inverse condemnation claim. The City again filed a demurrer and pleas in bar relying on the same grounds as previously. However, the

7

demurrer now stated that it was encompassing the due process and equal protection claims.

The circuit court, from the bench, sustained the demurrer as to the equal protection claim with leave to amend. Later, the court issued a letter opinion sustaining the demurrer to the due process claims without leave to amend. In the letter, the court stated that Lee "cannot, as a matter of law make a case for due process deprivation while he is entitled to postdeprivation relief under his Count II claim for relief for inverse condemnation."

Lee then filed a second amended complaint consisting of a renewed equal protection claim, as well as restating the existing claims for inverse condemnation and property damage. It also continued to include federal and state due process allegations and claims. In response to the second amended complaint, the City filed an answer with affirmative defenses, including that Lee had failed to exhaust his administrative remedies. The City also filed an "Objection to Second Amended Complaint and Motion to Dismiss" in which it argued that Lee failed to replead his equal protection claim within 14 days, and that Lee had again alleged violations of due process after the court denied Lee leave to do so. The court heard argument and, ruling from the bench, denied the motion to dismiss. However, the order denying the motion to dismiss stated:

8

it appearing to the Court that [Lee], without waiving and while expressly reserving his exception and objection to the Court's prior ruling dismissing [his] due process claims, acknowledges and agrees that as the result of said prior ruling of the Court Count One of the Second Amended Complaint states only an equal protection claim.

The City subsequently filed a revised answer to the second amended complaint and a demurrer to Lee's equal protection claim. The circuit court heard argument on the demurrer and reserved its ruling. Later, the circuit court heard argument on the pending pleas in bar, initially filed in response to the first amended complaint, to the inverse condemnation and property damage claims. From the bench, the court granted the City's plea as to the property damage claim and reserved ruling on the inverse condemnation claim.

By letter opinion dated June 25, 2009, the circuit court granted the plea in bar to Lee's inverse condemnation claim and also analyzed in detail the due process "notice and appeal" issues that are pleaded in conjunction with the inverse condemnation claim and that underlie Lee's first assignment of error.[1]

---

[1] The court later issued a letter opinion overruling the outstanding demurrer to Lee's only remaining claim, alleging violation of his equal protection right. However, Lee then nonsuited that claim.

9

Lee appeals the various adverse rulings and assigns error, without elaboration as to the nature of the error, as follows (verbatim):

1. The trial court erred in dismissing Lee's due process claim.

2. The trial court erred in dismissing Lee's inverse condemnation claim.

3. The trial court erred in dismissing Lee's property damage claim.

DISCUSSION

A. DUE PROCESS

We review de novo the circuit court's sustaining of the demurrer, observing familiar principles:

> The purpose of a demurrer is to determine whether a motion for judgment states a cause of action upon which the requested relief may be granted.  A demurrer tests the legal sufficiency of facts alleged in pleadings, not the strength of proof.

Augusta Mut. Ins. Co. v. Mason, 274 Va. 199, 204, 645 S.E.2d 290, 293 (2007) (internal citations and quotation marks omitted).

On brief, Lee argues that he stated a cause of action for a violation of his due process rights because of the defects he listed in the September 12 letter.  These defects, Lee argues, resulted in the denial of his constitutional right to notice and an opportunity to be heard prior to the demolition of the building.

First, Lee notes that the letter, while alleging violation of the Uniform Statewide Building Code ("USBC"), erroneously cited § 130.0 of the USBC, a section that does not exist. Second, he argues that the letter stated that he had a 21-day window to appeal under the Maintenance Code of the USBC,[2] but that the appeal period should have been controlled by the Construction Code of the USBC,[3] which provides for a 90-day appeal period.  Third, Lee argues that § 118.3 of the Construction Code requires that an inspection report be prepared and filed in the records of the local building department, and that the notice to him should have contained "a statement requiring the person receiving the notice to determine whether to accept or reject the terms of the notice." Finally, Lee argues that Code § 15.2-906 requires notice to be given to the owner and lienholder of the affected property, and be published once a week for two successive weeks in a newspaper of general circulation in the locality before demolition may occur.  Such notice to lienholder and publication were not done.

The City responds that, regardless of any notice deficiencies, a demolition of private property for public use cannot constitute a due process violation because of the

_____

[2] The Maintenance Code is set out in Part III of the USBC.
[3] The Construction Code is set out in Part I of the USBC.

availability of a post-deprivation action for inverse condemnation. The City further responds that the alleged defects in the notice are unrelated to the question of whether due process was provided, relying upon Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950) (requiring notice calculated to apprise parties of the pending action and an opportunity to present objections).

The United States Constitution guarantees that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. "In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." Zinermon v. Burch, 494 U.S. 113, 125 (1990) (emphasis in original). "The constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process." Id. at 126.

While the Supreme Court of the United States "usually has held that the Constitution requires some kind of a hearing before the State deprives a person of liberty or property," Id. at 127,"[i]n some circumstances, however, the Court has held that a statutory provision for a postdeprivation hearing, or a

12

common-law tort remedy for erroneous deprivation, satisfies due process." Id. at 128.

The Fourth Circuit Court of Appeals has found that because "aggrieved property owners may file an inverse condemnation action pursuant to Virginia's declaratory judgment statute," they are afforded procedural due process as a matter of law. Presley v. City of Charlottesville, 464 F.3d 480, 490 (4th Cir. 2006) (citing Richmeade, L.P. v. City of Richmond, 267 Va. 598, 594 S.E.2d 606 (2004)); see also Tri-County Paving v. Ashe, 281 F.3d 430, 438 (4th Cir. 2002) (availability of post-deprivation procedures bars landowner's procedural due process claim).

We do not address whether, as a general principle, upon a taking for public use the availability of a post-deprivation inverse condemnation action by statute affords an aggrieved landowner due process of law. See Presley, 464 F.3d at 490. The circuit court concluded that the availability of an inverse condemnation action by statute afforded Lee due process of law per se, despite also finding that Lee could not avail himself of an inverse condemnation action because there was no taking but only the abatement of a nuisance.

As discussed below, we agree with the circuit court that the City's demolition of Lee's property was not a taking, but rather the abatement of a nuisance for which no compensation is due. Keystone Bituminous Coal Ass'n v. DeBenedictis, 480 U.S.

13

470, 492 (1987). Consequently, even if a post-deprivation hearing would satisfy due process, Lee was not entitled to such a hearing because there was no compensable taking. The circuit court therefore erred in sustaining the demurrer to count one of the amended complaint on that basis. However, for reasons discussed below, that error was harmless.

This Court has previously explained:

> The abatement of a nuisance often requires prompt and summary proceedings, and where the abatement is authorized under the police power of the State and due process of law has been observed, the owner of the property destroyed for the public good has no constitutional rights beyond those provided in the statute under which the abatement is made.

Stickley v. Givens, 176 Va. 548, 562, 11 S.E.2d 631, 638 (1940). Lee does not contest that the demolition was "authorized under the police power of the State." Likewise he does not challenge the constitutionality of the statute, regulations, or municipal ordinances under which the City acted. Id. Rather, on brief his only contention is that, by its September 12 letter and subsequent conduct, the City did not observe due process of law because it provided "insufficient" notice. In doing so, Lee conflates unrelated regulatory deficiencies with the alleged constitutional violation of his right to be notified of the City's decision and to present his objection. It is possible for a state

14

agency to fail to adhere strictly to its regulations without violating the constitutional right to due process.  See Bates v. Sponberg, 547 F.2d 325, 329-30 (6th Cir. 1976) ("it is only when the agency's disregard of its rules results in a procedure which in itself impinges upon due process rights that a federal court should intervene in the decisional processes of state institutions").

The circuit court specifically addressed in detail the "notice and hearing" grounds for Lee's assignment of error in its June 25, 2009 letter opinion, which granted the plea in bar to the inverse condemnation claim that was grounded upon due process principles.  The circuit court stated: "The September letter represented the notice to demolish under § 118.3 and it stipulated the time period in which the building needed to be demolished and gave a 21 day time period during which Lee could appeal the unsafe designation. . . . Lee's due process rights were safeguarded by the opportunity to appeal the decision of the City that his property constituted a public nuisance."

Based upon Lee's own pleadings and the record, we agree with the circuit court that Lee's constitutional due process rights to notice and an opportunity to object were not violated by the deficiencies of the September 12 letter.  In Mullane, the Supreme Court of the United States explained the notice required to satisfy due process:

15

> An elementary and fundamental requirement of due
> process in any proceeding which is to be
> accorded finality is notice reasonably
> calculated, under all the circumstances, to
> apprise interested parties of the pendency of
> the action and afford them an opportunity to
> present their objections. The notice must be of
> such nature as reasonably to convey the required
> information, and it must afford a reasonable
> time for those interested to make their
> appearance.

339 U.S. at 314.[4]

The September 12 letter incorrectly cited the controlling section of the USBC,[5] and we take as true Lee's allegations that the City failed to send notice to lienholders or publish the notice in a newspaper of general circulation. Nonetheless, it cannot be said that the letter failed to apprise Lee "of the pendency of the action" or to "afford [him] an opportunity to present [his] objections." Id. The letter informed Lee that the City had found the property to be "unsafe and a public

---

[4] More recently, the United States Supreme Court reiterated the core principle of Mullane, holding that due process did not require actual notice in a forfeiture proceeding, but only notice "reasonably calculated" to "inform those affected." Dusenbery v. United States, 534 U.S. 161, 170 (2002). See also United Student Aid Funds, Inc. v. Espinosa, 559 U.S. ___, ___, 130 S.Ct. 1367, 1378 (2010) (no due process violation where a failure to hold an adversary proceeding and serve notice through summons and complaint did not deprive creditor of adequate notice that its interest will be adversely affected).

[5] Section 105.1 of the Virginia Maintenance Code states, in part: "[W]hen the code official determines that an unsafe structure or a structure unfit for human occupancy constitutes such a hazard that it should be razed or removed, then the code official shall be permitted to order the demolition of such

nuisance" in violation of the USBC, and that Lee had a right to appeal that determination.  It is clear that Lee actually received the notice and appreciated its gravity, since he immediately retained counsel and met with City officials to discuss the condition of the property.  Upon these specific facts, it is immaterial whether the appeal period was 21 days or 90 days, since during the 107 days that elapsed from receipt of the notice until demolition Lee made no inquiries about his appeal rights and took no actions to avail himself thereof.

Lee next argues, relying on Jones v. Board of Governors, 704 F.2d 713, 717 (4th Cir. 1983), that he was deprived of due process as a result of the City's deviation from its own procedures and previous assurances.  In Jones, the Fourth Circuit Court of Appeals recognized that "significant departures from stated procedures of government and even from isolated assurances by governmental officers which have induced reasonable and detrimental reliance may, if sufficiently unfair and prejudicial, constitute procedural due process violations." Id. (citing United States v. Caceres, 440 U.S. 741, 752-53 & n.15 (1979)) (secret audio recordings admissible despite being made in violation of IRS regulations, as taxpayer had no reason to rely on those regulations).

---

structures in accordance with applicable requirements of this code."

Here Lee neither alleged in his pleadings nor asserted in his assignments of error or on brief that he "reasonably relied on agency regulations promulgated for his guidance or benefit and has suffered substantially because of their violation by the agency." Caceres, 440 U.S. at 752-53. Likewise, Lee neither alleged nor argued that he relied on the "assurances [of] governmental officers which have induced reasonable and detrimental reliance." Jones, 704 F.2d at 717. See also Cox v. Louisiana, 379 U.S. 559, 571 (1965) (individual could not be punished for demonstrating near courthouse where the highest police officials of the city had advised the demonstrators that they could meet where they did). While Lee stated that he met with the City and "agreed to make certain changes requested by the [City] to alleviate [its] safety concerns," he did not allege that the City told him that doing so in any way vitiated his obligation to appeal within the required time-frame (whether 21 days or 90 days), or that the City induced him not to appeal.

Accordingly, we agree with the circuit court in its June 25, 2009 letter opinion that Lee actually received constitutionally adequate notice and an opportunity to appeal. Lee's due process claims therefore fail to state a cause of action upon which the requested relief may be granted. Augusta Mutual Ins. Co., 274 Va. at 204, 645 S.E.2d at 293.

18

## B. INVERSE CONDEMNATION

Lee assigns error to the circuit court granting the City's plea in bar to his claim for inverse condemnation for failure to exhaust administrative remedies. "A plea in bar presents a distinct issue of fact which, if proven, creates a bar to the plaintiff's right of recovery." Station #2, LLC v. Lynch, 280 Va. 166, 175, 695 S.E.2d 537, 542 (2010) (internal quotation marks omitted).

The Constitution of Virginia guarantees that "the General Assembly shall not pass any law . . . whereby private property shall be taken or damaged for public uses, without just compensation." Va. Const. art. I, § 11. The General Assembly has afforded those aggrieved by a taking with a statutory remedy for inverse condemnation. See Code § 8.01-187.

By letter opinion, the circuit court found that Lee's failure to exhaust his administrative remedies, i.e. appeal to the local administrative body, barred his inverse condemnation claim. Lee does not dispute the legal effect of his failure to appeal. Rather, he argues that, in the absence of proper notice, an appeal period cannot begin to run.

As discussed above, the City's September 12 letter constituted sufficient notice to apprise Lee of his right to be heard by way of an appeal to the Board of Building Code Appeals. See Code § 36-105. Having failed to appeal the

City's determination that the property was a nuisance, Lee acquiesced in that determination as a "thing decided." Lily v. Caroline County, 259 Va. 291, 296, 526 S.E.2d 743, 745 (2000) (dismissal of declaratory judgment action based on failure to file appeal with board of zoning appeals) (internal quotation marks omitted).

The law is well settled that the abatement of a nuisance by a public body is not a compensable taking. Keystone Bituminous Coal, 480 U.S. at 492 ("the State has not 'taken' anything when it asserts its power to enjoin the nuisance-like activity."); Stickley, 176 Va. at 561, 11 S.E.2d at 63 ("In the abatement of a public nuisance, it is not necessary to provide any compensation to the owner of the property which creates the nuisance."); Jeremy Improvement Co. v. Commonwealth, 106 Va. 482, 490, 56 S.E. 224, 227 (1907) ("The abatement of such a nuisance for the public safety comes under the police power of the State, and is not a taking of private property for a public use in the sense contemplated by the constitution, for which compensation must be allowed."). Therefore, the circuit court properly granted the City's plea in bar to Lee's inverse condemnation claim.

### C. PROPERTY DAMAGE

Lee argues that the trial court erred in granting the City's plea in bar to his property damage claim. The City's

plea in bar consisted of two grounds: the application of Code § 15.2-209 and the doctrine of sovereign immunity. Because no evidence was taken in support of the plea in bar, we review Lee's claim taking all material factual allegations as true. Station # 2, LLC, 280 Va. at 169, 695 S.E.2d at 539.

Code § 15.2-209(A) requires that "[e]very claim cognizable against any county, city, or town for negligence shall be forever barred unless the claimant . . . has filed a written statement of the nature of the claim . . . within six months after such cause of action accrued." In his amended complaint and second amended complaint, Lee alleged that his counsel notified the City Attorney, in writing, of the time, place, and location of the demolition on or about May 2, 2007, less than six months after the demolition. Taking that allegation as true, and in the absence of an evidentiary hearing, Code § 15.2-209 could not serve as the basis for sustaining the plea in bar.

Lee further argues that sovereign immunity could not serve as a bar to his property damage claim against the City. We have previously explained the standard of review in a sovereign immunity case:

> Where no evidence is taken in support of the plea, the trial court, and the appellate court upon review, must rely solely upon the pleadings . . . in resolving the issue presented. The

> existence of sovereign immunity is a question of
> law that is reviewed de novo.

City of Chesapeake v. Cunningham, 268 Va. 624, 633, 604 S.E.2d 420, 426 (2004) (internal citation omitted).  In City of Chesapeake, we explained that "[s]overeign immunity protects municipalities from tort liability arising from the exercise of governmental functions," id. at 634, 604 S.E.2d at 426, which include exercises of the "police power."  Id. at 638, 604 S.E.2d 429.  See also Edwards v. City of Portsmouth, 237 Va. 167, 171, 375 S.E.2d 747, 749 (1989) (city immune for exercise of police power).

We have long recognized that the abatement of a public nuisance is an exercise of the police power.  See, e.g., Stickley, 176 Va. at 562, 11 S.E.2d at 638 (abatement authorized under the police power of the state); Bunkley v. Commonwealth, 130 Va. 55, 68, 108 S.E. 1, 5 (1921) (abatement of nuisance proper exercise of Commonwealth's police power).

In City of Chesapeake, we explained that "[a] function is governmental if it entails the exercise of an entity's political, discretionary, or legislative authority."  268 Va. at 634, 604 S.E.2d at 426.  "[W]hen a municipality plans, designs, regulates or provides a service for the common good, it performs a governmental function."  Id. at 634, 604 S.E.2d 426.  On the other hand, "[i]f the function is a ministerial

22

act and involves no discretion, it is proprietary." Id. For example, "routine maintenance or operation of a municipal service is proprietary." Id. at 634, 604 S.E.2d at 427. In Fenon v. Norfolk, 203 Va. 551, 556, 125 S.E.2d 808, 812 (1962), we explained:

> The underlying test is whether the act is for the common good of all without the element of special corporate benefit, or pecuniary profit. If it is, there is no liability, if it is not, there may be liability. That it may be undertaken voluntarily not under compulsion of statute is not of consequence.

Applying the foregoing principles to this case, it is clear that the City is immune for exercising its police power to abate the public nuisance that it had deemed Lee's building to pose. See Stickley, 176 Va. at 562, 11 S.E.2d at 638. Furthermore, the City's demolition of Lee's building was not a ministerial act or routine maintenance of a municipal service. See City of Chesapeake, 268 Va. at 633, 604 S.E.2d at 426. Rather, the demolition entailed the exercise of the City's discretionary authority, id. at 634, 604 S.E.2d at 426, and was performed "without the element of special corporate benefit, or pecuniary profit." Fenon, 203 Va. at 556, 125 S.E.2d at 812.

Accordingly, we find that the City's demolition of Lee's building was an exercise of the governmental function and that the City enjoyed sovereign immunity for its actions.

Therefore, the circuit court did not err in granting the plea in bar to Lee's claim for property damage.

CONCLUSION

For the reasons stated above, the judgment of the circuit court will be affirmed.

<u>Affirmed.</u>