COURT OF APPEALS OF VIRGINIA

Present:    Judges O'Brien, Causey and Friedman
Argued at Norfolk, Virginia


H. CLIFF PAGE, JR.
                                                    MEMORANDUM OPINION* BY
v.        Record No. 0175-22-1             JUDGE DORIS HENDERSON CAUSEY
                                                         JUNE 20, 2023
PORTSMOUTH REDEVELOPMENT AND
  HOUSING AUTHORITY


FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
Kenneth R. Melvin, Judge

Joseph V. Sherman (William B. Newman; Joseph V. Sherman, P.C.,
on briefs), for appellant.

Gregory S. Bean (Gordon Rees Scully Mansukhani, LLP, on brief),
for appellee.


H. Cliff Page, appellant, appeals the circuit court's ruling that his claim to recover damages

from Portsmouth Redevelopment and Housing Authority ("PRHA") was barred by sovereign

immunity.  For the reasons below, we affirm the circuit court's judgment.

BACKGROUND[1]

Page filed a complaint stating that PRHA had demolished a building it owned at 1020 High

Street, Portsmouth, Virginia ("building"), that shared a common wall with a building located at

1000 High Street, Portsmouth, Virginia owned by Page.  The complaint alleged that PRHA was

negligent in its demolition, damaging Page's building, and demanded that the matter be heard by a

* This opinion is not designated for publication.  *See* Code § 17.1-413.

[1] When "parties present evidence on the plea [in bar] ore tenus, the circuit court's factual
findings are accorded the weight of a jury finding and will not be disturbed on appeal unless they
are plainly wrong or without evidentiary support."  *Massenburg v. City of Petersburg*, 298 Va.
212, 216 (2019) (quoting *Hawthorne v. VanMarter*, 279 Va. 566, 577 (2010)).

jury. PRHA moved for a plea in bar asserting that PRHA's demolition of the structure was a governmental function and protected by sovereign immunity thus barring Page's claim.[2] The circuit court held a hearing on PRHA's plea in bar.

At the hearing, PRHA introduced a letter written by the City of Portsmouth ("the City") notifying PRHA that the City had declared the building a "dangerous building in accordance with Portsmouth City Code Section 17-1 and the VA Uniform Statewide Building Code Part III." The letter stated that the City declared the structure a "dangerous building" and required "[e]mergency [d]emolition" and that it would "proceed to advertise the property for demolition and solicit bids to accomplish the same in the event [PRHA was] unable to meet [a specified] completion date." The letter noted that "[the City's] purpose [was] to ensure the safety and welfare of the public." A former PRHA employee testified that PRHA had determined the building was a blight, based on Code § 36-49.1:1. The employee had observed the property and testified that "[t]he building was in a blighted and deteriorated condition"; the building's roof was damaged and exposed the building "to the elements"; "[t]here were some structural deficiencies with respect to the masonry and framing of the building"; and there were "severe settlement issues," "significant water damage," and "asbestos-containing materials." PRHA eventually demolished the building.

The circuit court entered a letter opinion in January 2020, finding that PRHA was acting in a governmental capacity and was immune from tort liability. The opinion granted PRHA's plea in bar and dismissed the case without prejudice. Two years later, in January 2022, the circuit court entered an "Order" that referenced the January 2020 "letter opinion," granted PRHA's plea in bar, and dismissed Page's claim without prejudice.

---

[2] PRHA also moved for a demurrer based on its allegation that Page "failed to adequately plead the notice requirements set forth by Virginia Code § 15.2-209(A)," but the circuit court's letter opinion noted that PRHA had "stipulated during oral argument . . . that [its d]emurrer should be overruled."

In January 2022, Page moved to reconsider and the circuit court held a hearing. At the hearing, Page argued that PRHA was grossly negligent in demolishing the building. PRHA objected to any arguments about gross negligence because gross negligence was not pleaded in Page's initial complaint. The circuit court denied Page's motion to reconsider. Page filed a second motion to reconsider twenty-one days after entry of the January 2022 order dismissing Page's complaint. Page noted in his cover letter accompanying the motion that the motion was filed on the last date the circuit court had jurisdiction over the matter, and thus the motion "require[d] a ruling [that] day." Attached to the motion as an exhibit was a letter from PRHA to the Virginia Department of Historic Resources detailing financial and economic concerns PRHA had about whether to demolish, rehabilitate, or sell 1020 High Street. The next day, after the circuit court had already lost jurisdiction of the matter, the court issued an opinion and order denying Page's second motion to reconsider. In its opinion and order, the court appeared to consider the letter from PRHA to the Virginia Department of Historic Resources in making its ruling. The opinion and order waived the endorsements of counsel. This appeal follows.

ANALYSIS[3]

Jury Demand

Page argues that we should remand this matter for a jury to resolve any disputes of fact. For the following reasons, we disagree.

---

[3] PRHA argues that Page's appeal is not timely because the circuit court's letter opinion was a final order and Page was required to file his appeal within thirty days of the order entered in January 2020. Rule 5A:6. Thus, PRHA contends that Page's appeal filed in January 2022 is untimely. However, we hold that the letter opinion was not a final order and that the January 2022 order was the final order; thus, Page's appeal is timely. *See* Rule 5A:6 ("Except as otherwise provided by statute, no appeal will be allowed unless, within 30 days after entry of *final judgment* or other appealable order or decree . . . counsel files with the clerk of the trial court a notice of appeal." (emphasis added)); *S'holder Representative Servs., LLC v. Airbus Americas, Inc.*, 292 Va. 682, 689-91 (2016) (concluding that the final judgment was the order, not the opinion letter, even where the opinion letter announced the court's intended judgment); *id.* at 690-91 ("It is well-established that a court speaks only through its written orders. At the

Under Code § 8.01-336, "[u]nless waived, any demand for a trial by jury in a civil case made in compliance with the Rules of Supreme Court of Virginia shall be sufficient, with no further notice, hearing, or order, to proceed thereon."[4]  The parties may waive their right to a jury trial.  *See* Rule 3:21(d).  In *Chandler v. Fletcher*, 169 Va. at 32, 35 (1937) (quoting Code § 5490 (1936)), Code § 5490 provided, in the type of action before the court, a trial by jury unless "waived by the consent of the parties."  The defendant argued that the court lacked jurisdiction to enter judgment on the matter because the court had not held a jury trial, as required by Code § 5490.  The Court held that the defendant had waived his right to a jury trial, when

> [t]he record indisputably show[ed] that [the defendant] was present in the . . . action whenever any step was taken therein, from the very beginning of the proceedings to the time the final order was entered, and at no time did he protest or object to any motion made by the petitioner or action taken by the court.

*Id.* at 37.  The Court held that the defendant had "impliedly consented to the entire procedure" and that waiver of the jury trial provided by Code § 5490 "may be implied as well as express." *Id.*; *see also Cook v. Hayden*, 183 Va. 203, 223 (1944) (holding that a party waived its right to a jury trial when it "consent[ed] to a hearing of the evidence by the trial court" and did not move for a jury trial until "the conclusion of all the evidence").

At the beginning of this action, Page had a right to a jury trial after he demanded it in his complaint, like the defendant in *Chandler* had a statutory right to a jury trial.  Also, like *Chandler*, Page impliedly waived his right to a jury trial.  Page demanded a jury trial in his complaint.  But at no point during the trial did he object to the evidence being heard by the circuit court.  PRHA presented two witnesses and introduced two exhibits.  Page testified on his

---

time SRS filed its motion for reconsideration, the circuit court had not entered a final order memorializing the rulings in its opinion letter." (internal citation omitted)).

[4] Under Rule 3:21(b), "[a]ny party may demand a trial by jury of any issue triable of right by a jury in the complaint."

own behalf.  Both sides gave closing arguments.  The circuit court entered a letter opinion ruling for PRHA.  Two years later, the circuit court entered an order incorporating the letter opinion and removing the matter from the court's docket.  Mr. Page moved to reconsider shortly after the court entered this order, in which he again asserted his right to a jury trial.  Like the defendant in *Chandler*, Page was present from the very beginning of the trial until closing arguments.  Not once during the entire proceeding did Page object to the circuit court—instead of a jury—hearing the evidence.  Page did not mention his right to a jury trial until after entry of the order and his motion to reconsider two years after the trial was held.  Under these circumstances, we hold that Page, like the defendant in *Chandler*, "impliedly consented to the entire procedure," and thus impliedly waived his right to a jury trial.  169 Va. at 37.  Thus, the circuit court did not err in holding an evidentiary hearing on the plea in bar and Page is not entitled to a new evidentiary hearing in front of a jury.

Consideration of Letter from PRHA to Virginia Department of Historic Resources

PRHA argues that the circuit court improperly considered the letter attached to Page's second motion to reconsider because it was not properly authenticated, and thus we should not consider the letter as part of the record.  PRHA argues that it had no opportunity to object to the improper authentication of the letter.  For the following reasons, we agree.

"[O]bjections to the admission of the evidence must be made when the evidence is offered for admission." *Cherry v. Lawson Realty Corp.*, 295 Va. 369, 374 n.4 (2018).  "[I]f a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection shall not thereafter prejudice him on motion for a new trial or on appeal."  Code § 8.01-384(A).  "No party shall be deemed to have agreed to, or acquiesced in, any written order of a trial court so as to forfeit his right to contest such order on appeal except by express written agreement in his endorsement of the order." *Id.*

Here, PRHA did not have the opportunity to object to the circuit court's consideration of the letter Page attached to his second motion to reconsider; the day after the motion was filed, the circuit court ruled on the motion and issued an opinion and order that referenced the letter. The circuit court's actions were taken after it had already lost jurisdiction of the matter, and the order was entered without PRHA's or Page's endorsement. Because PRHA had no opportunity to object to the circuit court's consideration of the letter, we can consider PRHA's argument on appeal that we should not consider the letter. We hold that, based on Virginia Rule of Evidence 2:901, the letter was not properly authenticated and should not have been admitted into evidence.

"As a general rule, no writing may be admitted into evidence unless and until it has been 'authenticated,' i.e., until it has been shown to be genuine." *Proctor v. Commonwealth*, 14 Va. App. 937, 938 (1992) (quoting Charles E. Friend, *The Law of Evidence in Virginia* § 180 (3d ed. 1988)). Under Rule 2:901, "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the thing in question is what its proponent claims." Page did not offer any evidence to establish that the letter is what he claimed it is, and it has not been properly authenticated. Thus, the circuit court improperly considered the letter, and we will not consider the letter as part of the record in proceeding to the merits of this case.

<u>Whether Gross Negligence Was Pleaded</u>

Page argues that the circuit court erred in granting PRHA's plea in bar because sovereign immunity does not shield municipalities from liability for gross negligence. PRHA argues that the circuit court was correct in granting its plea in bar because Page never pleaded gross negligence. Page responds that gross negligence does not have to be specifically pleaded.

"[A] plaintiff must give a defendant notice of its specific claims." *Howard v. Ball*, 289 Va. 470, 474 (2015). "[P]ermitting a plaintiff to raise a new claim at trial that was n[ot] . . . pled

in the complaint constitute[s] an abuse of discretion" when doing so causes "the defendant [to be] prejudiced by the inability to prepare to defend against the new claim." *Manchester Oaks Homeowners Ass'n, Inc. v. Batt*, 284 Va. 409, 426 (2012).

Ordinary negligence and gross negligence are distinguishable claims. *See Cowan v. Hospice Support Care, Inc.*, 268 Va. 482, 482-85 (2004) (discussing plaintiff's filing of both "claims of simple negligence [and] gross negligence" and the circuit court's dismissal of the simple negligence claim). "[T]here are fundamental distinctions separating acts or omissions of simple negligence from those of gross negligence and willful and wanton negligence." *Id.* at 487. "Gross negligence is substantially and appreciably higher in magnitude than ordinary negligence." *Town of Big Stone Gap v. Johnson*, 184 Va. 375, 378 (1945) (quoting *Altman v. Aronson*, 121 N.E. 505, 506 (Mass. 1919)). "It is very great negligence, or the absence of slight diligence, or the want of even scant care." *Id.* (quoting *Altman*, 121 N.E. at 506). "It is a heedless and palpable violation of legal duty respecting the rights of others. The element of culpability which characterizes all negligence is, in gross negligence, magnified to a high degree as compared with that present in ordinary negligence." *Id.* at 378-79 (quoting *Altman*, 121 N.E. at 506).

Here, Page's complaint does not plead gross negligence. Page's complaint lists one count—"[n]egligence." The complaint alleged that PRHA "breached [the] duties [it owed to Page] by failing to take *ordinary care*" and undertook a "negligent demolition." (Emphasis added). Nowhere in the complaint does Page use the words "gross negligence" or "scant care." Page did not argue that PRHA was grossly negligent until his first motion to reconsider.[5]

---

[5] "A motion to reconsider ordinarily asks a court to reconsider a holding because, in the opinion of the movant, the holding was erroneous." *Wal-Mart Stores E., LP v. State Corp. Comm'n*, 299 Va. 57, 76 (2020). A motion to reconsider may not "request [the circuit court] to consider for the first time something the movant had never before specifically sought." *See id.* (holding that the SCC did not abuse its discretion in denying Walmart's motion to reconsider

Permitting Page to argue gross negligence would prejudice PRHA because it was unprepared to defend against this claim at trial and may have pursued a different litigation strategy if it had been properly noticed of the claim. Thus, we will not consider Page's gross negligence argument on appeal.

Plea in Bar: Sovereign Immunity

Page argues that the circuit court erred in finding that PRHA's demolition of the building was protected by sovereign immunity. Specifically, he argues that: (1) "PRHA's failure to maintain the building created a nuisance"; (2) "PRHA cannot claim immunity for deferring routine maintenance"; (3) "PRHA employed neglect as a tool to further its business interests"; (4) the circuit court erred in finding that "because PRHA had not sold or developed the property in the five years since demolition, re-development was not [PRHA's] primary purpose" in demolishing the building; (5) "PRHA benefits from reduction in value of Mr. Page's property"; (6) "[e]conomic redevelopment is not a public use benefitting the public"; and (7) it is not clear that any exigency required demolition of the building.

Page's first six arguments require us to rely on facts contained in the letter attached to his second motion to reconsider. Because we hold, *supra*, that the letter was not properly authenticated and we will not consider it as part of the record on appeal, we cannot consider these arguments.

Page's seventh argument requires us to re-determine the facts on appeal. When the "parties present evidence on the plea [in bar] ore tenus, the circuit court's factual findings are accorded the weight of a jury finding and will not be disturbed on appeal unless they are plainly wrong or without evidentiary support." *Massenburg v. City of Petersburg*, 298 Va. 212, 216 (2019). As

because "Walmart's motion . . . did not ask the Commission to reconsider its holding denying Walmart's request for permission to aggregate the load of a specific number of customers" but instead, "Walmart argued that the Commission should consider whether authorizing some load less than Walmart requested in its Aggregation Petitions would satisfy Code § 56-577(A)(4)" (internal quotation marks omitted)).

stated in its opinion letter, the circuit court found that "[b]y all accounts, the demolished structure was dilapidated and unfit for human habitation." This finding is supported by the letter from the City that declared the structure a "dangerous building" and required "[e]mergency [d]emolition." The finding is also supported by the testimony from the former PRHA employee that PRHA had determined the building was a blight based on Code § 36-49.1:1. Based on this former employee's observation, the building: "was in a blighted and deteriorated condition," had a damaged roof, had structural deficiencies, had settlement issues, had significant water damage, and contained asbestos.[6] In making this finding, the circuit court disregarded Page's testimony that the property was not a blight and did not require demolition. "The fact finder, who has the opportunity to see and hear the witnesses, has the sole responsibility to determine their credibility, the weight to be given their testimony, and the inferences to be drawn from proven facts." *Rams v. Commonwealth*, 70 Va. App. 12, 26-27 (2019) (quoting *Hamilton v. Commonwealth*, 279 Va. 94, 105 (2010)). Because there is evidentiary support for the circuit court's finding that the building was "dilapidated and unfit for human habitation," we will not disturb this finding on appeal. As Page's argument depends on our re-determination of the facts, which we cannot do here, his argument lacks merit.

We now address whether the facts, as the circuit court found them, support its decision to grant PRHA's plea in bar, based on the circuit court's determination that PRHA undertook a governmental function in demolishing the property.

---

[6] Under §§ 36-49.1:1, 36-3, "'[b]lighted property' means any . . . structure . . . that endangers the public's health, safety, or welfare because the structure . . . is dilapidated, deteriorated, or violates minimum health and safety standards." "[A]n authority, or any locality, shall have the power to acquire or repair any blighted property, . . . and, further, shall have the power to . . . dispose of such property for purposes consistent with this chapter." Code § 36-49.1:1(A).

Here, the dilapidation of the building qualifies as an "exigency" under these code sections and allows PRHA to dispose of the building.

"A plea in bar asserts a single issue, which, if proved, creates a bar to a plaintiff's recovery." *Hawthorne v. VanMarter*, 279 Va. 566, 577 (2010). "The party asserting a plea in bar bears the burden of proof on the issue presented." *Id.* At issue here is whether PRHA's demolition of the building at 1020 High Street was protected by sovereign immunity.

"The existence of sovereign immunity is a question of law that is reviewed de novo." *Lee v. City of Norfolk*, 281 Va. 423, 439 (2011) (quoting *City of Chesapeake v. Cunningham*, 268 Va. 624, 633 (2004)). "[S]overeign immunity protects municipalities from tort liability arising from the exercise of governmental functions." *Id.* (quoting *Cunningham*, 268 Va. at 634). "[A] function is governmental if it entails the exercise of an entity's political, discretionary, or legislative authority. [W]hen a municipality plans, designs, regulates or provides a service for the common good, it performs a governmental function." *Id.* (second alteration in original) (quoting *Cunningham*, 268 Va. at 634). On the other hand, "[i]f the function is a ministerial act and involves no discretion, it is proprietary." *Id.* (alteration in original) (quoting *Cunningham*, 268 Va. at 634). For example, "routine maintenance or operation of a municipal service is proprietary." *Id.* (quoting *Cunningham*, 268 Va. at 634). "The underlying test is whether the act is for the common good of all without the element of special corporate benefit, or pecuniary profit. If it is, there is no liability, if it is not, there may be liability." *Id.* at 440 (quoting *Fenon v. Norfolk*, 203 Va. 551, 556 (1962)). "[F]or purposes of uniformity in determining tort immunity, a municipal housing authority should be held to occupy the same status as the municipality which brings it into existence and oversees its activities." *Virginia Elec. & Power Co. v. Hampton Redevelopment & Hous. Auth.*, 217 Va. 30, 34 (1976).

In *Lee*, the Court held that the City of Norfolk's demolition of a building was a governmental function and thus protected by sovereign immunity. 281 Va. at 440. The City sent a letter to Lee stating that Lee's building violated the "health and safety regulations" of the

- 10 -

Virginia Uniform Statewide Building Code and the Code of the City of Norfolk, and declaring the building "Unsafe and a Public Nuisance." *Id.* at 428 (capitalizations altered). The letter directed Lee to board and secure the property and have the building demolished by a certain date. *Id.* The City later sent Lee a second letter stating that the City would demolish the building under the emergency provisions of the Uniform Statewide Building Code. *Id.* at 429. The City demolished the building. *Id.* The Court held that "it is clear that the City is immune for exercising its police power to abate the public nuisance that it had deemed Lee's building to pose." *Id.* at 440. "[T]he City's demolition of Lee's building was not a ministerial act or routine maintenance of a municipal service. Rather, the demolition entailed the exercise of the City's discretionary authority and was performed without the element of special corporate benefit, or pecuniary profit." *Id.* (internal quotation marks and citation omitted).

Here, the circumstances are almost identical to those in *Lee*. The circuit court found that PRHA was a "municipal housing authority" that "occup[ied] the same status as the municipality that br[ought] it into existence and oversees its activities," thus entitling it to the same sovereign immunity to which a municipality would be entitled.[7] As in *Lee*, the City sent two letters to PRHA about the building. The second letter to PRHA stated that PHRA's building was a "dangerous building" under the Virginia Uniform Statewide Building Code and Portsmouth City Code. It

---

[7] Page argues that "[t]he City's interest in demolition [to protect public welfare] does not impute to PRHA"; thus, PRHA is not protected by sovereign immunity. In contrast, at the trial, Page conceded that PRHA "w[as] acting . . . on behalf of the [C]ity."

"[A] party may not approbate and reprobate by taking successive positions in the course of litigation that are either inconsistent with each other or mutually contradictory." *Nelson v. Commonwealth*, 71 Va. App. 397, 403 (2020) (quoting *Rowe v. Commonwealth*, 277 Va. 495, 502 (2009)) (holding that the appellant's argument on appeal that the trial court erred in finding that it did not have jurisdiction over a motion was barred by the approbate-reprobate doctrine when the appellant had stated below that the trial court did not have jurisdiction). Thus, Page's argument is barred by the approbate-reprobate doctrine, and we will not consider it. Accordingly, we will not disturb the circuit court's finding that PRHA occupied the same status as the City for sovereign immunity purposes.

also stated that maintaining the building in such a condition constituted a nuisance. The letter explained that the City declared the structure a "dangerous building" and required "[e]mergency [d]emolition" and that it would arrange for demolition if PRHA was unable to complete the demolition by the deadline. The letter noted that "[the City's] purpose [wa]s to ensure the safety and welfare of the public." PRHA demolished its own building. There is no evidence that the demolition was performed with "the element of special corporate benefit, or pecuniary profit." Thus, like the Court in *Lee*, we hold that the circuit court did not err in ruling that PRHA's demolition of its own building was protected by sovereign immunity.

CONCLUSION

For the reasons stated, we affirm the circuit court's decision.

*Affirmed*.