PRESENT: Koontz, Kinser, Lemons, Goodwyn, Millette, and Mims, JJ., and Carrico, S.J.

STATION #2, LLC

v.    Record No. 091410

MICHAEL LYNCH, ET AL.

OPINION BY
JUSTICE WILLIAM C. MIMS
June 10, 2010

FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Junius P. Fulton, III, Judge

In this appeal, we consider whether an oral agreement to allow Station #2, LLC ("Station #2") to install soundproofing material in a void space between the ceiling of premises leased by it and the floor of premises owned by another was made unenforceable by the statute of frauds. We also consider claims of fraudulent inducement to contract and statutory conspiracy.

I.    BACKGROUND AND MATERIAL PROCEEDINGS BELOW

The circuit court decided this case on demurrers and a special plea in bar. When an issue is decided by the circuit court on demurrer, we accept as true the facts alleged by the plaintiff, who is entitled to the benefit of all reasonable inferences that may be drawn from them. Hamlet v. Hayes, 273 Va. 437, 439, 641 S.E.2d 115, 116 (2007). We also accept the plaintiff's allegations as true when the circuit court takes no evidence on a plea in bar. Gray v. Virginia Sec'y of Transp., 276 Va. 93, 97, 662 S.E.2d 66, 68 (2008). Accordingly, we draw

our facts here from the allegations made by Station #2 as the plaintiff below.

Michael and Lisa Lynch owned a three-story building at 233 Granby Street in the City of Norfolk. They conveyed the second and third stories to 237 Granby LLC ("237 Granby"), which intended to renovate and sell them as condominiums. In December 2004 the Lynches leased the first story to Station #2, which intended to operate a restaurant offering music and live entertainment. The lease provided that:

> Tenant will insure that in conjunction with the construction of the condominiums located above the business that additional soundproofing material to be selected by the Tenant with professional sound engineering consultants will be installed between the ceiling of the Premises and the floor of the lower level of the condominiums located above the business. Tenant will use reasonable efforts to work in conjunction with the builder of the condominiums with regard to soundproofing. . . . The [material] is to be of sufficient sound abatement characteristic as to effectively minimize noise and vibration from the leased premises being transmitted to the condominiums and to meet Landlord's covenant of quiet enjoyment passing to the owner of the condominiums.

Prior to executing the lease, members of Station #2 retained a sound attenuation expert and met with Michael Lynch, Frank T. Gadams, and representatives of Hourigan Construction Corp. ("Hourigan") to discuss installation of the soundproofing material. Gadams was a principal of Marathon Development Group, Inc. ("Marathon"), an agent of 237 Granby in possession

2

of the two upper stories.[1]  Marathon had hired Hourigan to renovate and develop the condominium units.

Gadams and Marathon agreed to allow Station #2 access to the second story to install the soundproofing material in the void space between the ceiling of the first story and the floor of the second story.  Nevertheless, Hourigan closed the void space without informing Station #2's sound attenuation expert. Hourigan claimed it had done so at Gadams' and Marathon's direction.  The Lynches subsequently refused to intervene on behalf of Station #2 with Gadams and Marathon or to allow Station #2 to install the soundproofing material in the void space through the ceiling of the first story.

The City of Norfolk began citing Station #2 for violations of its noise ordinance in the summer of 2005.  After repeated citations the City ordered Station #2 to cease all musical performances in February 2006.  Consequently, the restaurant suffered a sharp decline in regular patronage.  It also was forced to cancel scheduled weddings, wedding rehearsals, and parties.  Station #2 informed Michael Lynch that it would withhold payment of rent until it was permitted to install the

---

[1] Station #2 alleged that Gadams purchased the upper stories "through a company he owned" and the answer filed by Gadams and Marathon does not deny that he owns 237 Granby.  We infer that Station #2 alleges Gadams, as a principal of Marathon and owner of 237 Granby, and Marathon were agents of 237 Granby.

soundproofing material, whereupon he locked Station #2 out of the premises.  The restaurant ceased operation.

Station #2 filed an amended complaint in the circuit court alleging breach of contract by Gadams and Marathon ("Count V"), fraudulent inducement to contract by Gadams and Marathon ("Count VI"), and statutory conspiracy among Gadams, Marathon, and the Lynches ("Count VII").[2]  The defendants filed demurrers to Counts VI and VII, which the circuit court sustained.  Gadams and Marathon also entered a special plea of the statute of frauds to Count V.  They asserted that installing soundproofing material in the void space was analogous to creating a party wall.  Since an agreement to create a party wall would permit Station #2 "to access and occupy the real property," it could not be enforced unless in writing.  The circuit court sustained the plea in bar and dismissed the case. We awarded Station #2 this appeal.

## II. ANALYSIS

### A.  THE DEMURRERS TO COUNT VI AND VII

"A demurrer tests the legal sufficiency of facts alleged in pleadings, not the strength of proof. . . .  Because the decision whether to grant a demurrer involves issues of law, we review the circuit court's judgment de novo."  Augusta Mut.

---

[2] The complaint included other claims against the Lynches and Hourigan that have been dismissed or non-suited and are not before us in this appeal.

4

Ins. Co. v. Mason, 274 Va. 199, 204, 645 S.E.2d 290, 293 (2007) (internal citations and quotation marks omitted).  Station #2 argues that the circuit court erred in sustaining the demurrer to Count VI because the complaint alleged all elements necessary for a claim of fraud or fraudulent inducement.  We disagree.

Although we clearly have stated the proposition, we often must repeat it:  an omission or non-performance of a duty may sound both in contract and in tort, but only where the omission or non-performance of the contractual duty also violates a common law duty.  Richmond Metro. Auth. v. McDevitt Street Bovis, Inc., 256 Va. 553, 558, 507 S.E.2d 344, 347 (1998) (citing Foreign Mission Bd. v. Wade, 242 Va. 234, 241, 409 S.E.2d 144, 148 (1991)); see also Dunn Constr. Co. v. Cloney, 278 Va. 260, 266-67, 682 S.E.2d 943, 946 (2009); Augusta Mutual, 274 Va. at 205, 645 S.E.2d at 293.  The only duty Station #2 alleged was contractual:  that Gadams and Marathon had agreed to allow Station #2 access to install the soundproofing material.  Consequently, Station #2 has not pleaded a proper claim for fraud.

Even if we assume, as Station #2 invites us to do, that Gadams' and Marathon's agreement induced Station #2 to contract with the Lynches, and that Gadams' and Marathon's contractual duty to allow the installation did not spring from the lease

5

between Station #2 and the Lynches, its fraud claim fails. Station #2 contends it relied on its existing agreement with Gadams and Marathon when it leased the first story from the Lynches.  It further contends that Gadams and Marathon never intended to allow Station #2 to install the soundproofing material.  Consequently, their promise to do so was a false representation of material fact.

In general, "if a defendant makes a promise that, when made, he has no intention of performing, that promise is considered a misrepresentation of present fact and may form the basis for a claim of actual fraud."  SuperValu, Inc. v. Johnson, 276 Va. 356, 368, 666 S.E.2d 335, 342 (2008); accord Richmond Metro. Auth., 256 Va. at 560, 507 S.E.2d at 348.[3] However, Station #2 did not plead sufficiently that Gadams and Marathon intended not to allow installation of the soundproofing material at the time they promised to do so.

The only mention of a contemporaneous intent not to perform on the promise to permit the installation appears in Count VII, the statutory conspiracy claim:

> [A]ll of the defendants were aware that there was never an intention by any of them to allow sound attenuation materials to be installed . . . or, alternatively, they decided at some point to

---

[3] We have expressly rejected the possibility that a false promise could satisfy the requirement of a false representation of material fact to support a claim of constructive fraud. SuperValu, 276 Va. at 368 & n.2, 666 S.E.2d at 342 & n.2.

6

> breach their agreements.  In either event,
> whether the promises were false at the inception
> or were agreements that were broken later, the
> defendants deceived the principals of Station #2
> . . . .

Station #2 does not allege that Gadams' and Marathon's promise was false when made but rather that the Lynches, Gadams, and Marathon all agreed to prevent Station #2 from effecting the installation, either before or after Station #2 entered into the lease.  Accordingly, Station #2's allegations were insufficient to establish a claim of fraudulent inducement.  The circuit court did not err in sustaining the demurrer to Count VI.[4, 5]

---

[4] Because we find Station #2's allegations insufficient, we do not consider "whether a claim for fraud in the inducement exists when the party engaging in the alleged fraudulent conduct is not a party to the contract fraudulently induced." Augusta Mutual, 274 Va. at 206 n.4, 645 S.E.2d at 294 n.4.

[5] Our determination that Station #2's allegations are insufficient does not alter the pleading requirements for a fraud claim.  We previously said, "[w]here fraud is relied on, the pleading must show specifically in what the fraud consists, so that the defendant may have the opportunity of shaping his defence accordingly, and since fraud must be clearly proved it must be distinctly stated." Mortarino v. Consultant Eng'g Servs., 251 Va. 289, 295, 467 S.E.2d 778, 782 (1996) (quoting Ciarochi v. Ciarochi, 194 Va. 313, 315, 73 S.E.2d 402, 403 (1952)) (quotation marks and alterations omitted).  To satisfy this requirement, the plaintiff must state facts which, if proved, establish all the elements of the claim.  See, e.g., Van Deusen v. Snead, 247 Va. 324, 328-29, 441 S.E.2d 207, 209-10 (1994) (reviewing argument that a claim for fraud failed to allege facts to prove an element).

False representation of material fact is an element to a claim for fraud.  In this case, the alleged "false representation" is a mere failure to perform on a promise, which is only sufficient if the promisor had no intention of

7

Station #2 also argues that the circuit court erred in sustaining the demurrers to Count VII because the complaint alleged all elements necessary for a claim of statutory conspiracy. We again disagree.

Code § 18.2-499 criminalizes conspiracies to "willfully and maliciously injur[e] another in his reputation, trade, business or profession by any means whatever." Code § 18.2-500 allows victims of such conspiracies to claim treble damages and attorney's fees in a civil action. "[T]o survive demurrer, an allegation of conspiracy, whether criminal or civil, must at least allege an unlawful act or an unlawful purpose." Hechler Chevrolet, Inc. v. General Motors Corp., 230 Va. 396, 402, 337 S.E.2d 744, 748 (1985). Station #2 asserts that Gadams, Marathon, and the Lynches acted unlawfully by preventing it from installing the soundproofing material. Even assuming the defendants conspired among each other, preventing Station #2 from installing the soundproofing material does not constitute an "unlawful act."

In Worrie v. Boze, 198 Va. 533, 536, 95 S.E.2d 192, 196 (1956), we recognized a common law claim of conspiracy by a plaintiff who alleged the defendants had conspired to procure the breach of a contract. We commented in Chaves v. Johnson,

---

performing at the time the promise was made. SuperValu, 276 Va. at 368, 666 S.E.2d at 342.

8

230 Va. 112, 119-20, 335 S.E.2d 97, 102 (1985), that such claims were embraced by Code §§ 18.2-499 and 18.2-500.[6] However, we presently are of opinion that a conspiracy merely to breach a contract that does not involve an independent duty arising outside the contract is insufficient to establish a civil claim under Code § 18.2-500.[7]

To permit a mere breach of contract to constitute an "unlawful act" for the purposes of the conspiracy statute would be inconsistent with the diligence we have exercised to prevent "turning every breach of contract into an actionable claim for fraud." Dunn Constr. Co., 278 Va. at 268, 682 S.E.2d at 946; Augusta Mutual, 274 Va. at 208, 645 S.E.2d at 295; Richmond Metro. Auth., 256 Va. at 560, 507 S.E.2d at 348. Non-performance of a contractual promise does not, without more, create a basis for recovery in tort. Likewise, we do not believe it can rise to the level of an "unlawful act" under Code § 18.2-500 for a similar reason: the duty of performance under the contract springs solely from the agreement; the duty is not imposed extrinsically by statute, whether criminal or

---

[6] We later cited this comment in Nedrich v. Jones, 245 Va. 465, 474, 429 S.E.2d 201, 206 (1993). Retracting this dictum does not disturb our decision in Nedrich. In that case, we merely held that it was not sanctionable for an attorney to seek treble damages for an alleged conspiracy to breach a contract.

[7] Because Station #2 does not state a claim for common law conspiracy, we do not consider the common law action for conspiracy to procure breach of contract recognized in Worrie.

9

civil, or independently by common law. Thus, non-performance, without more, is not an "unlawful act."

Applying this standard, the cases cited by Station #2 are distinguishable. In Commercial Business Systems v. Bellsouth Services, 249 Va. 39, 41, 453 S.E.2d 261, 263 (1995), the plaintiff alleged an employee of the defendant awarded a contract to the plaintiff's competitor as the result of a bribe. In Advanced Marine Enterprises v. PRC Inc., 256 Va. 106, 112, 501 S.E.2d 148, 151 (1998), the plaintiff alleged that a defendant knew its actions would constitute actionable tortious interference, knowingly weighed the cost of damages, and purposefully proceeded with its plan to hire employees of the plaintiff who were subject to a covenant not to compete. In CaterCorp, Inc. v. Catering Concepts, Inc., 246 Va. 22, 26, 431 S.E.2d 277, 280-81 (1993), the plaintiff alleged that a defendant competitor had conspired to work with a person still in its employ, in violation of his common law duty of loyalty. Similarly, the plaintiffs in Simmons v. Miller, 261 Va. 561, 578, 544 S.E.2d 666, 676-77 (2001), and Feddeman & Company v. Langan Associates, P.C., 260 Va. 35, 46, 530 S.E.2d 668, 675 (2000), alleged an accompanying breach of fiduciary duty.

Station #2's agreements with the Lynches and with Gadams and Marathon do not implicate statutory or independent common law duties. Consequently, merely alleging breach of those

10

contracts is insufficient to establish a claim of statutory conspiracy under Code §§ 18.2-499 and 18.2-500. The circuit court did not err in sustaining the demurrers to Count VII.[8]

### B. THE PLEA IN BAR TO COUNT V

While "[t]he standards of review for a defensive plea in bar and a demurrer are substantially similar," Sullivan v. Jones, 42 Va. App. 794, 802, 595 S.E.2d 36, 40 (2004), "[a] plea in bar presents a distinct issue of fact which, if proven, creates a bar to the plaintiff's right of recovery. The moving party has the burden of proof on that issue." Hilton v. Martin, 275 Va. 176, 179-80, 654 S.E.2d 572, 574 (2008). A circuit court's judgment that a party has met his burden of proof "will be upheld unless it is plainly wrong or without evidence to support it." Hudson v. Lanier, 255 Va. 330, 333-34, 497 S.E.2d 471, 473 (1998); see also Upper Occoquan Sewage Auth. v. Blake Constr. Co., 266 Va. 582, 590-92, 587 S.E.2d 721, 725-26 (2003) (reversing judgment on a plea in bar that the court sustained without evidence to support it).

Gadams and Marathon argue that Station #2's breach of contract claim is barred by the statute of frauds.[9] However,

---

[8] Because we have determined that Station #2 did not plead a proper claim of fraud or fraudulent inducement, that claim cannot be the predicate "unlawful act" for Station #2's statutory conspiracy claim.

[9] The statute provides that "[u]nless a promise, contract, agreement, representation, assurance, or ratification, or some

they have failed to prove that the statute applies.  They argue

that Station #2 needed an easement to install the soundproofing

material in the void space.  However, they did not prove that

237 Granby owned the void space.[10]  Based upon these facts we

conclude that Station #2 merely needed a license, i.e.,

permission to enter the second story for the purpose of

installing the soundproofing material.[11]

Permission to enter the real property of another does not

rise to the level of an easement.  An easement concerns the

continuing use of real property.  Russakoff v. Scruggs, 241 Va.

135, 138, 400 S.E.2d 529, 531 (1991) ("Easements are . . . the

privilege to use the land of another in a particular manner and

for a particular purpose."  (quoting Brown v. Haley, 233 Va.

210, 216, 355 S.E.2d 563, 567-68 (1987)) (internal quotation

marks omitted)); see also United States v. Blackman, 270 Va.

68, 76, 613 S.E.2d 442, 445 (2005) ("Easements are described as

being 'affirmative' easements when they convey privileges on

memorandum or note thereof, is in writing and signed by the party to be charged or his agent, no action shall be brought . . . [u]pon any contract for the sale of real estate, or for the lease thereof for more than a year."  Code § 11-2(6).

[10] At its hearing on the plea in bar, the circuit court asked whether Gadams and Marathon wished to introduce evidence. They declined and invited the court to rule on the pleadings.

[11] We note that neither Gadams nor Marathon owned the upper stories and that 237 Granby is not a party to this action. However, while Gadams, Marathon, and 237 Granby are distinct legal entities, we infer that Station #2 alleges Gadams and Marathon, as agents of 237 Granby, had apparent authority to grant Station #2 either a license or an easement.

the part of one person . . . to use the land of another . . . .
Easements are described as being 'negative' when they convey
rights to demand that the owner . . . refrain from certain
otherwise permissible uses of his own land."). Permission
merely to enter the real property of another without such
continuing use is a license. Stanley v. Mullins, 187 Va. 193,
200, 45 S.E.2d 881, 885 (1948); Power v. Tazewells, 66 Va. (25
Gratt.) 786, 790 (1875).

"[T]he grant of an easement is embraced within the statute
of frauds, and therefore must be in writing." Buckles v.
Kennedy Coal Corp., 134 Va. 1, 15, 114 S.E. 233, 237 (1922)
(quoting Wynn v. Garland, 19 Ark. 23, 34 (1857)) (internal
quotation marks omitted). However, it has long been
established that a license may be granted orally without
violating the rule. Power, 66 Va. (25 Gratt.) at 790. The
record establishes nothing more than that 237 Granby owned the
upper stories. Moreover, the parties agree that the circuit
court did not determine the ownership of the void space.
Without establishing 237 Granby as the owner, Gadams and
Marathon failed to show there was any real property in their
possession and control that Station #2 would need to use.
Absent such a showing, Station #2 required no more than their
permission to enter the second story.

Gadams and Marathon did not prove that the agreement required more than the grant of a license to which the statute of frauds does not apply.  The circuit court erred in sustaining their plea in bar because there is no evidence to support it.  We will reverse and remand for trial on Station #2's breach of contract claim.[12]

### III.  CONCLUSION

For the reasons set forth above, we will affirm the judgment of the circuit court as to both demurrers, reverse the judgment sustaining the plea in bar, and remand for trial on Station #2's breach of contract claim.

<u>Affirmed in part,
reversed in part,
and remanded.</u>

---

[12] By inviting the circuit court to rule on the pleadings, Gadams and Marathon waived their opportunity to introduce evidence supporting the plea in bar.