**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 11-2327

JAMES M. DUNLAP,

              Plaintiff - Appellant,

        v.

COTTMAN TRANSMISSIONS SYSTEMS, LLC; TODD P. LEFF,

              Defendants - Appellees.

Appeal from the United States District Court for the Eastern
District of Virginia, at Norfolk.  Arenda Wright Allen, District
Judge.  (2:11-cv-00272-AWA-DEM)

Argued: May 14, 2013                Decided: August 21, 2013

Before Sandra Day O'CONNOR, Associate Justice (Retired), Supreme
Court of the United States, sitting by designation, and WYNN and
DIAZ, Circuit Judges.

Unpublished Order of Certification to the Supreme Court of
Virginia.

**ARGUED:**  Crystal M. Johnson, UNIVERSITY OF GEORGIA SCHOOL OF
LAW, Appellate Litigation Clinic, Athens, Georgia, for
Appellant.  James C. Rubinger, PLAVE KOCH PLC, Reston, Virginia,
for Appellees.  **ON BRIEF:**  Peter B. Rutledge, Paula Briceno,
Brittany Cambre, UNIVERSITY OF GEORGIA SCHOOL OF LAW, Appellate
Litigation Clinic, Athens, Georgia, for Appellant.  Benjamin B.
Reed, PLAVE KOCH, PLC, Reston, Virginia, for Appellees.

PER CURIAM:

## I.  Questions Certified

The United States Court of Appeals for the Fourth Circuit, exercising the privilege afforded it by the Supreme Court of Virginia through its Rule 5:40 to certify questions of law to the Supreme Court of Virginia when a question of Virginia law is determinative in a pending action and there is no controlling Virginia precedent on point, requests the Supreme Court of Virginia to exercise its discretion to answer the following questions:

1.  May a plaintiff use tortious interference with contract or tortious interference with business expectancy as the predicate unlawful act for a claim under the Virginia business conspiracy statute, Va. Code §§ 18.2-499, 18.2-500?

2.  Does a two-year or five-year statute of limitations apply to claims of tortious interference with contract and tortious interference with business expectancy under Va. Code § 8.01-243?

We acknowledge that the Supreme Court of Virginia may restate these questions.  See Va. Sup. Ct. R. 5:40(d).

2

II.  Nature of the Controversy and Statement of Relevant Facts

AAMCO Transmissions, Inc. is a nationwide transmission and automobile repair company that operates through local franchises. This case involves a dispute between an AAMCO franchisee named James Dunlap and various parties related to AAMCO and its recent attempt to eliminate certain local franchises with overlapping business areas in Virginia.

Dunlap, the plaintiff-appellant, has operated a pair of AAMCO franchises for over 30 years. In 2006, AAMCO was acquired by an asset-management company that already held a large share of Cottman Transmission Systems, LLC, an AAMCO competitor. Because of the substantial overlap among the businesses – and the potential for competition among local franchisees – the new AAMCO owners attempted to convert Cottman franchises to AAMCO franchises and then close some existing franchises. Dunlap found himself among the disfavored franchisees. See J.A. 5-8, 11-14.

Dunlap fought AAMCO to stay in business, and the parties eventually litigated and settled cross-disputes for trademark infringement and wrongful termination of Dunlap's franchise agreements. Subject to conditions not particularly relevant here, this settlement allowed Dunlap to continue to operate his AAMCO franchises. Then, as now, Dunlap maintained that AAMCO tried to terminate his franchises for minor or trumped up

3

violations of their franchise agreements as a pretext to force him out of business. See J.A. 11-14; AAMCO Transmissions, Inc. v. Dunlap, 2011 WL 3586225 (E.D. Pa. Aug. 16, 2011). Because AAMCO was the contracting party, and its duties were resolved in the prior litigation, Dunlap's present complaint is not directed to AAMCO itself. Instead, Dunlap now asserts that the decision to force him out of business was a conspiracy for personal profit among new AAMCO principal Todd Leff, Cottman Transmission Systems, and certain of Dunlap's local competitors who would benefit from his exit. J.A. 11-20. He maintains that AAMCO's actions, precipitated by these other parties, caused irreparable harm to his business by depriving him of marketing benefits that typically flow from a franchise arrangement. The present complaint thus names Leff and Cottman as defendants in an action for: (1) violation of Virginia's business conspiracy statute, (2) tortious interference with contract, and (3) tortious interference with business expectancy. J.A. 4-5, 20-24.

The district court dismissed the business conspiracy count for failure to allege a valid "unlawful act" as a predicate for the conspiracy. It relied on a recent Virginia Supreme Court decision called Station #2, LLC v. Lynch, 280 Va. 166 (2010), which held that "a conspiracy merely to breach a contract that does not involve an independent duty arising outside the contract is insufficient to establish a civil claim under [the

4

Virginia business conspiracy statute]." Id. at 174. The district court then found that "[a]ll of the duties involved in this case arise out of and the damages flow from contractual obligations" – namely, the franchise agreements between Dunlap and AAMCO. J.A. 43-44. Accordingly, the district court concluded that applying the business conspiracy statute in this case would risk exactly what the Virginia Supreme Court had tried expressly to avoid: "turning every breach of contract into an actionable claim for fraud." Station #2, 280 Va. at 174 (citation omitted). In dismissing this claim, it joined another district court from this Circuit that recently rejected a tortious interference allegation as the predicate for a business conspiracy count under the rule announced in Station #2. See J.A. 43 (discussing Zurich Am. Ins. Co. v. Turbyfill, 2010 WL 4065527 (W.D. Va. Oct. 15, 2010)).

Next, the district court dismissed both of the independent common-law tort claims as untimely. Virginia has a five-year statute of limitations for injuries to property rights, see Va. Code § 8.01-243(B), but a two-year statute of limitations for actions related to personal injuries, id. § 8.01-243(A). Relying on Willard v. Moneta Bldg. Supply, Inc., 262 Va. 473 (2001), the district court noted that "an allegation of nothing more than disappointed economic expectations does not amount to an injury to property" because "the law of contracts provides

5

the sole remedy for such a loss." J.A. 45 (quoting Willard, 262 Va. at 480). Having already characterized the common-law tort claims as flowing from breach of contract for purposes of the conspiracy count, the district court again relied on Station #2 to classify them as contract (and, thus, personal injury) claims for purposes of the two-year statute of limitations. J.A. 44-45 & n.2. In other words, because the injury in this case went to Dunlap's disappointed expectations about how AAMCO would perform and the profitability of Dunlap's business – and not to a property injury as such – the district court applied the shorter statute of limitations, and dismissed.

III. Legal Discussion and Relevant Virginia Case Law

A. Business Conspiracy Issue

The reason to certify the first issue is straightforward: The Virginia Supreme Court's recent decision in Station #2 signals obvious skepticism about business conspiracy claims predicated on contract disputes, but we are unable to ascertain with certainty how far that skepticism extends.

On the one hand, Station #2 clearly represents an important change in Virginia's business conspiracy law, and we agree with the district court that this case raises concerns of the kind addressed there. In Station #2, the Virginia Supreme Court at least partly rejected its established case law making it actionable to "conspire[] to procure the breach of a contract."

6

See 280 Va. at 174 (rejecting Chaves v. Johnson, 230 Va. 112 (1985), and Worrie v. Boze, 198 Va. 533 (1956)). The Court noted that, while it had previously approved such claims, it was now "of opinion that a conspiracy merely to breach a contract that does not involve an independent duty arising outside the contract is insufficient to establish a civil [conspiracy] claim." Id. (emphasis added). The Court warned against allowing mere contract disputes to be transformed into claims of fraud and conspiracy. Id. And the standard that it announced appears to ask whether the duty that has been violated "aris[es] outside the contract," id. – a standard one might think unmet by garden-variety claims of tortious interference with contract or with the business expectations that contract law protects.

On the other hand, there are plausible reasons to limit Station #2's holding to actual breach of contract claims, and to distinguish tortious interferences with contract or business expectancy. As Dunlap points out, see Appellant's Br. 15-16, the duty not to interfere with the agreements of others arises as a common-law corollary of the contract, not from the contract itself. Indeed, it cannot arise from the contract itself because the duty is one that falls upon third parties, not the parties to the agreement. According to Dunlap, this distinction is sufficient to place the violated duty "outside the contract" for purposes of Station #2.

7

Whether (and when) this is a meaningful distinction is, we think, a question that is best posed to the Virginia Supreme Court, for it involves interpretation of its precedents and important questions of state law and policy.  To begin, Station #2 does not definitively settle the question:  It is true that the duty to avoid contractual interference does not flow directly from a party's contractual agreements, but it is also true that the ultimate duty that is breached is contractual, and the set of harms redressed flows entirely from the contract.  In other words, Station #2 poses a question of how to conceptualize tortious interference for the purpose of the conspiracy statute's unlawful act requirement, but does not answer it. Moreover, in typical cases alleging tortious interference the challenged conduct will – as here – involve discussions and negotiations among one contracting party and potential business partners about the possibility of breaching the old contract and starting a new relationship.  Whether to view such negotiations as "conspiratorial" is an important question of state policy: Doing so elevates the sanctity of contract, but perhaps too far. A state court could easily conclude that it is adequate, and more likely to encourage efficient business decisions, to give the harmed party only the benefit of its contractual expectations through a simple breach of contract action against its counter-party.  Cf. Station #2, 280 Va. at 174 (expressing

8

concern about "turning every breach of contract into an actionable claim for fraud") (citation omitted).

Moreover, especially in light of these policy concerns, it may be that the right answer involves finer distinctions of the kind that the Virginia Supreme Court is better fit to make. For example, it is possible that tortious interference claims should sometimes constitute "unlawful acts" for purposes of the business conspiracy statute, but only in exceptional cases. Cf. Advanced Marine Enters., Inc. v. PRC Inc., 256 Va. 106, 117-18 (1998) (allowing conspiracy claim predicated on tortious interference, before Station #2, in a case involving "outrageous" conduct such as theft of corporate files by breaching employees). The extent to which Station #2 preserves any such claim is unclear, however, and so we think it best to seek a definitive answer from the Virginia Supreme Court.

### B. Statute of Limitations Issue

The reason to certify the second question is even more straightforward: The question which statute of limitations to apply to tortious interference claims is a pure legal issue that has not been settled by the Virginia Supreme Court. Virginia applies a two-year statute of limitations to claims regarding personal injuries and a five-year statute of limitations to claims regarding injuries to property. See, e.g., Willard, 262 Va. at 478. But that distinction can be hard to draw, and the

9

Virginia Supreme Court has previously disagreed with how this Circuit has attempted to articulate it. See id. at 479 (rejecting the test applied in Brown v. Am. Broad. Co., 704 F.2d 1296, 1303-04 (4th Cir. 1983)). As with the previous issue, we believe that this question at bottom concerns an ambiguity in the Virginia Supreme Court's recent precedent that is best resolved by that Court.

Indeed, the Virginia Supreme Court's decision in Willard can be read to support either side in this case. Willard held that an infringement on the dissenters' rights of corporate shareholders was an injury to property interests for purposes of the five-year statute of limitations. Id. at 481. In so doing, it made clear that "conduct . . . directed at [another's] property, . . . constitutes an injury to property," for purposes of the limitation periods whether the injury is direct or indirect. Id. at 480 (citation omitted). But it also emphasized that "disappointed economic expectations do[] not amount to an injury to property" because "the law of contracts provides the sole remedy for such a loss." Id. Dunlap plausibly argues that the conduct here was directed at his property (that is, his franchises). The district court, however, plausibly viewed the injuries as flowing from Dunlap's disappointed expectations about those franchises' profitability had AAMCO continued to perform under its contracts. As with the

10

previous issue, it is possible to conceptualize tortious interference as being fundamentally a part of the protections for business expectations provided by the "law of contracts," id., or as a protection for contractually secured property rights that sounds most fundamentally in the law of torts. Accordingly, it may be wise judicial policy to impose the same limitations period for tortious interference as for the breach of contract that it ultimately addresses, or it may not. Especially given our decision to seek the guidance of the Virginia Supreme Court on the first issue in this case, we prefer to ask that Court to settle this related issue as well.

In sum, we find ourselves unable to predict with confidence how the Virginia Supreme Court would rule on the questions discussed above. As a result, we respectfully request that the Virginia Supreme Court answer our certified questions.

IV. Certified Questions Determine This Proceeding

We also note, briefly, that the two questions together determine the outcome of this case. If the district court's two holdings regarding tortious interference are correct as a matter of Virginia law, we would affirm. If either is incorrect, we would reverse and remand for further proceedings because these were the sole rationales adopted by the district court in dismissing the case.

11

V.   The Parties and Their Counsel

A.

The Plaintiff-Appellant is James Dunlap.   Counsel for the Plaintiff-Appellant is:


Peter B. Rutledge
Paula Briceno
Brittany Cambre
Crystal M. Johnson
University of Georgia School of Law
Appellate Litigation Clinic
100 Herty Drive,
Athens, GA 30602
(706) 542-1328 (Telephone)
(706) 542-5556 (Facsimile)

B.

The Defendants-Appellees are Todd P. Leff and Cottman Transmission Systems, LLC.   Counsel for the Defendants-Appellees is:


James C. Rubinger
Benjamin B. Reed
Plave Koch PLC
12355 Sunrise Valley Drive,
Suite 230
Reston, VA 20191
(703) 774-1200 (Telephone)
(703) 774-1201 (Facsimile)

## VI. Conclusion

Pursuant to the privilege made available by Virginia Supreme Court Rule 5:40, we respectfully:

1) Certify the questions stated in Part I of this Order of Certification to the Supreme Court of Virginia for resolution;

2) Order the Clerk of this Court to forward to the Supreme Court of Virginia, under the official seal of this Court, a copy of this Order of Certification, together with the original or copies of the record before this Court to the extent requested by the Supreme Court of Virginia; and

3) Order that any request for all or part of the record be fulfilled by the Clerk of this Court simply upon notification from the Clerk of the Supreme Court of Virginia.

QUESTIONS CERTIFIED

FOR THE COURT

/s/ James A. Wynn, Jr.
    Circuit Judge

13