PRESENT: Lemons, C.J., and Goodwyn, Powell, Kelsey, McCullough, and Chafin, JJ., and Koontz, S.J.

THOMAS K. PLOFCHAN, JR.,
CO-TRUSTEE OF THE PAULA G.
PLOFCHAN REVOCABLE TRUST, ET AL.

v. Record No. 200237

OPINION BY
JUSTICE S. BERNARD GOODWYN
April 1, 2021

PAULA G. PLOFCHAN

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Robert J. Smith, Judge

In this appeal, we consider whether the circuit court erred in concluding that the plaintiffs lacked standing and were collaterally estopped from litigating the issue of the defendant's relevant states of mental competency, because of rulings in a prior out of state guardianship proceeding.

I. BACKGROUND

Paula G. Plofchan (Ms. Plofchan), matriarch of the Plofchan family, is 82 years old. Ms. Plofchan was married to Thomas K. Plofchan, Sr. Ms. Plofchan and her husband had seven children.

On April 14, 1997, Ms. Plofchan executed a general durable power of attorney (POA). Ms. Plofchan was residing in Texas at the time of execution, thus the POA is governed by Texas law. In the POA, Ms. Plofchan appointed her husband to be her attorney-in-fact, but provided that in case her husband was not able to serve, one of her sons, Thomas Plofchan, Jr. (Thomas), would serve as her attorney-in-fact. In 2001, after Ms. Plofchan's husband passed away, Thomas became her attorney-in-fact pursuant to the terms of the POA.

The POA conferred broad powers on Ms. Plofchan's attorney-in-fact, but also specifically authorized the attorney-in-fact to "[d]emand, sue for, and receive all sums of money . . . [and] property (both real and personal)" owed to Ms. Plofchan. It further authorized the

1

attorney-in-fact to "take all means for the recovery" of funds owed to Ms. Plofchan, including actions at law and suits in equity.

Several years later, on September 30, 2006, Ms. Plofchan executed the Paula G. Plofchan Revocable Trust Agreement (the Trust Agreement), creating the Paula G. Plofchan Revocable Trust (the Trust). In addition to being the grantor, Ms. Plofchan was also the trustee. The Trust Agreement provided that the grantor reserved "the right and power to alter, amend, or revoke this [T]rust [A]greement, at any time, and from time to time, without the consent of the trustee or any person." The Trust Agreement also stated that "[a]ny trustee is entitled to receive reasonable compensation for such trustee's services rendered in the administration of the [T]rust." Although Ms. Plofchan was still residing in Texas when she created the Trust, the Trust Agreement provided that it would be "construed and administered in accordance with the laws of the State of Virginia."

In 2013, Ms. Plofchan moved to New York to reside with one of her daughters, Jennifer Tyler (Jennifer). In June 2014, after undergoing a medical evaluation, Ms. Plofchan was diagnosed with Alzheimer's disease.

On November 20, 2016, Ms. Plofchan resigned as trustee of the Trust, and named two of her children, Elizabeth Plofchan (Elizabeth) and Thomas, as co-trustees to succeed her. In her resignation letter, Ms. Plofchan provided that "[i]n so resigning, I recognize that the successor co-trustees shall consider that my powers of alteration, amendment, revocation and withdrawal are suspended under the conditions set forth in the article titled Rights Reserved by the Grantor." Less than a week later, two doctors, Dr. Maria Muste (Dr. Muste) and Dr. Jeannette Yuen (Dr. Yuen), signed certificates of incapacity stating that Ms. Plofchan was deemed incapacitated pursuant the terms of the Trust Agreement.

2

On May 29, 2018, Ms. Plofchan executed a Revocation of Durable Power of Attorney, regarding the POA that appointed Thomas. On the same date, Ms. Plofchan petitioned the Supreme Court of Westchester County, New York, (the New York guardianship court) to appoint a guardian for her, pursuant to Article 81 of the New York Mental Hygiene Law.

In her petition, Ms. Plofchan claimed that while she was initially comfortable with Thomas' handling of her finances, she had been displeased with his recent actions, which she believed displayed a desire for increased control over her personal choices. She alleged that his actions were interfering with her personal freedom and her ability to make choices about her own quality of life. Thus, she asked the New York guardianship court to appoint her daughter, Jennifer, as her property guardian.

In her petition, Ms. Plofchan also requested that the New York guardianship court terminate all authority granted to Thomas and Elizabeth as co-trustees of the Trust. She further requested that the New York guardianship court revoke any documents "indicating or suggesting" that she had surrendered her capacity or competency in favor of the authority of Thomas and/or Elizabeth pursuant to the Trust.

On August 21, 2018, Dr. Muste and Dr. Yuen signed and notarized revocations of their prior certificates of incapacity concerning Ms. Plofchan. Dr. Muste indicated that her last examination of Ms. Plofchan was in early May of 2018. She stated that Ms. Plofchan's Alzheimer's diagnosis remained in place and that she had some short term memory loss, but that Ms. Plofchan had "a broad understanding of her finances." Dr. Muste further indicated that she believed Ms. Plofchan was "capable of making overall determination[s] and decisions as to the use and management of her investments and the proper use of her daily expenditures." Dr. Yuen

indicated that she last examined Ms. Plofchan a month prior and reported that Ms. Plofchan's medical condition was stable.

On August 22, 2018, Ms. Plofchan sent to all her children, including Thomas and Elizabeth, a letter with the subject line "Paula G. Revocable Trust." The body of the letter stated simply: "Please be advised that in accordance with Article IIIA of the Paula G. Plofchan Revocable Trust Agreement, I hereby revoke the Trust Agreement in its entirety." The letter was signed by Ms. Plofchan.

The New York guardianship court held proceedings regarding Ms. Plofchan's petition over the course of four days: August 23, 2018 and September 4-6, 2018. The New York guardianship court noted that Ms. Plofchan was present, "meaningfully participated," and was represented by a counsel of her choosing. Ms. Plofchan testified at the proceeding. She explained that she never managed her own finances during her adult life, stating that it was something her husband handled. She indicated that she "has never budgeted her finances and simply spends what she wants and expects her agents to pay the bills."

Thomas also testified. He stated that there had been a "closure of communication" and characterized Ms. Plofchan's actions as an "'overreaction' to the co-trustees' budgeting decisions." He explained that his concern with Ms. Plofchan having an unrestricted budget was that Ms. Plofchan's resources may be insufficient to provide for her needs for another 10 or 12 years.

The court-appointed evaluator also testified and her report was admitted into evidence. She noted that Ms. Plofchan could not delineate her assets or expenses, but that Ms. Plofchan felt she was being deprived of things she loved due to certain bills not being paid. The court-appointed evaluator observed that some internal family conflict existed and that only two of Ms.

4

Plofchan's seven children supported her petition, whereas the other five children supported the system already in place where Thomas and Elizabeth managed Ms. Plofchan's finances.

On January 22, 2019, the New York guardianship court entered an order denying Ms. Plofchan the relief she sought and dismissing the proceeding. The New York guardianship court found that Ms. Plofchan was not an incapacitated person as the term is defined in Article 81 of the New York Hygiene Law, and declined to accept her consent to appoint a guardian. The New York guardianship court explained that while it was clear that Ms. Plofchan was unhappy with Thomas and Elizabeth's management and felt a loss of control over her day-to-day decision-making, that there was no evidence of any fiduciary violations "sufficient to render the current advanced directives [including the POA and Trust] insufficient or unreliable." The New York guardianship court found that the POA and Trust executed by Ms. Plofchan were still appropriate and sufficient to provide proper protection of Ms. Plofchan's assets and obviated the need for appointing a guardian.

On April 30, 2019, Thomas and Elizabeth, as co-trustees of the Trust, and Thomas as the attorney-in-fact for Ms. Plofchan, filed a complaint against Ms. Plofchan in the Circuit Court for Fairfax County. They alleged that Ms. Plofchan is incapacitated as it relates to financial matters, and that she had ineffectively attempted to revoke the POA and the Trust. Thomas and Elizabeth claimed that beginning in June 2018, Ms. Plofchan, along with the help of two of her daughters, had frustrated the administration and management of Trust assets by contacting certain financial institutions in efforts to remove the co-trustees from the accounts, resulting in the co-trustees' loss of access to the accounts. Thomas and Elizabeth stated that they have not been able to regain access to the Trust's accounts or to Ms. Plofchan's accounts. They claimed they have not been able to "substantially communicate" with Ms. Plofchan since May 2018.

5

Thomas and Elizabeth sought injunctive relief to prohibit Ms. Plofchan from dissipating Trust assets and interfering with the Trust's administration. They averred that funds were removed from the Trust to pay for Ms. Plofchan and Jennifer's attorneys in the New York guardianship proceeding and that Ms. Plofchan paid Jennifer with funds from the Trust in an amount that went "above and beyond" a reasonable amount for room and board; Thomas and Elizabeth requested that the circuit court enter a mandatory injunction requiring the funds to be returned to the Trust. Lastly, Thomas and Elizabeth argued that even if the circuit court found that Ms. Plofchan was not incapacitated and that she properly revoked the Trust Agreement and POA, they were still entitled to reimbursement for costs and expenses incurred while carrying out their duties as co-trustees and attorney-in-fact. Therefore, they asked the circuit court to grant them all fees, costs, and reasonable attorneys' fees expended in defense of the Trust and the POA.

In June 2019, Ms. Plofchan filed what she titled a "plea in bar" in response to Thomas and Elizabeth's complaint. In her plea in bar, Ms. Plofchan asserted that plaintiffs lacked standing and that collateral estoppel barred the plaintiffs from challenging Ms. Plofchan's mental capacity.

Specifically, Ms. Plofchan claimed that Thomas lacked standing to bring the action as her attorney-in-fact because she revoked the POA in May 2018. Further, she claimed that she revoked the Trust in August 2018, and thus Thomas and Elizabeth lacked standing to bring the action as co-trustees of the Trust because the Trust did not exist as of the date of the filing of the complaint, meaning that they held no fiduciary position. Lastly, Ms. Plofchan argued that the doctrine of collateral estoppel barred the plaintiffs from relitigating the issue of her mental

6

capacity because the New York guardianship court had made a factual finding that she was not an incapacitated person.

On August 30, 2019, the circuit court held a hearing on the plea in bar. After hearing arguments from both sides, the circuit court ruled from the bench that the plea in bar was sustained; the circuit court did not elaborate on its ruling. The circuit court noted that because the plea in bar regarding standing was sustained, the plaintiffs did not have standing to request fees and costs of any type. On the same date, the circuit court entered an order sustaining the plea in bar and dismissing the complaint with prejudice.

Thomas and Elizabeth appeal. We granted three assignments of error:

1.  The Court abused its discretion in sustaining the Plea in Bar for Collateral Estoppel. This was an error of law and not harmless.

2.  The Court abused its discretion in sustaining the Plea in Bar for Lack of Standing. This was an error of law and not harmless.

3.  The Court abused its discretion in sustaining a plea in bar to the Fiduciaries' claims for fees and costs because such claims could not be resolved by the plea in bar.

II. ANALYSIS

A. Collateral Estoppel

Thomas and Elizabeth argue that the circuit court erred in sustaining Ms. Plofchan's plea in bar. They contend that collateral estoppel does not bar their action. They assert that the issue litigated in the New York guardianship proceeding and the issues in the current proceeding concerning Ms. Plofchan's mental capacity are not the same. Specifically, they argue that the standards to determine mental capacity are different in New York, Virginia, and Texas. They also contend that the parties and their privies are not the same.

Ms. Plofchan argues that the circuit court correctly sustained the plea in bar because collateral estoppel bars Thomas and Elizabeth's action. Ms. Plofchan contends that her mental

7

capacity was actually litigated in the New York proceeding, and that Thomas and Elizabeth are precluded from relitigating the issue of her mental capacity in this lawsuit. She argues that even though the legal standards are different, the factual finding made by the New York guardianship court, that Ms. Plofchan was not an incapacitated person, meets the capacity requirements in Virginia and Texas. Additionally, Ms. Plofchan argues that the New York guardianship court found that Ms. Plofchan understood and wanted to take authority away from Thomas to act as her agent and give it to Jennifer; she contends this established her capacity to revoke the POA pursuant to Texas law. Ms. Plofchan contends that privity is satisfied because Thomas and Elizabeth were parties in the New York guardianship proceeding.

Collateral estoppel, also referred to as issue preclusion, prevents the same parties from "[re]litigating in a subsequent suit any issue of fact actually litigated and essential to a valid and final personal judgment in the first action." *Funny Guy, LLC v. Lecego, LLC*, 293 Va. 135, 142 (2017) (internal quotation marks and alteration omitted). "Whether a claim or issue is precluded by a prior judgment is a question of law this Court reviews de novo." *Lane v. Bayview Loan Serv., LLC*, 297 Va. 645, 653 (2019).

> In order to successfully assert collateral estoppel, a party must establish the following:
>
> (1) the parties [or their privies] to the two proceedings must be the same, (2) the issue of fact sought to be litigated must have been actually litigated in the prior proceeding, (3) the issue of fact must have been essential to the prior judgment, and (4) the prior proceeding must have resulted in a valid, final judgment against the party against whom the doctrine is sought to be applied.

*Id.* at 654–55 (alteration in original) (internal quotation marks omitted). If a party fails to prove any one of these elements, then collateral estoppel does not bar the litigation.

We conclude Ms. Plofchan failed to establish that the issues of her mental capacity to revoke the POA in May 2018 and to revoke the Trust in August 2018, and her mental capacity at

8

present, were actually litigated in the New York proceedings. This is so for two reasons. First, the New York guardianship court evaluated Ms. Plofchan's mental capacity in terms of whether she needed a guardian appointed to protect her interests, applying a different standard than is applied when determining testamentary or contract capacity. Second, the issue of whether Ms. Plofchan specifically had the capacity to revoke her Trust and POA was not actually litigated.

The standard New York courts apply in a guardianship proceeding is set forth in the Mental Hygiene Law, which provides that

> the determination of incapacity shall be based on clear and convincing evidence and shall consist of a determination that a person is likely to suffer harm because: 1. the person is unable to provide for personal needs and/or property management; and 2. the person cannot adequately understand and appreciate the nature and consequences of such inability.

N.Y. Mental Hyg. Law § 81.02. Notably, this standard is different from the New York standard for determining whether an individual had capacity to execute trust documents. *See, e.g., In re Estate of Donaldson*, 956 N.Y.S.2d 840, 842–43 (N.Y. Sur. Ct. 2012). When evaluating an individual's capacity to execute trust documents, New York courts apply the "contract standard of capacity, which focuses on whether the person was able to understand the nature and consequences of a transaction and make a rational judgment concerning it." *Id*. at 843. The determination of whether Ms. Plofchan had capacity to execute or revoke the POA and the Trust was not actually litigated in the New York guardianship proceeding.

Additionally, to the extent the issue of Ms. Plofchan's mental capacity was litigated in New York, it was done using a different standard than that which would be applicable in this lawsuit. Under Virginia law, "[t]he capacity required to create, amend, revoke, or add property to a revocable trust, or to direct the actions of the trustee of a revocable trust, is the same as that required to make a will." Code § 64.2-750. "Such capacity exists, if at the time a will is

9

executed, the testator is capable of recollecting her property, the natural objects of her bounty and their claims upon her, knew the business about which she was engaged and how she wished to dispose of the property." *Kiddell v. Labowitz*, 284 Va. 611, 629 (2012) (internal quotation marks omitted). The time at which a document is executed is the "vital time for mental capacity to exist." *D'Ambrosio v. Wolf*, 295 Va. 48, 57 (2018).

The same is true regarding Ms. Plofchan's capacity to revoke the POA, which is subject to Texas law. In Texas, a person has the mental capacity to revoke a power of attorney if he or she understands the nature and consequences of his or her actions. *See In re Estate of Vackar*, 345 S.W.3d 588, 597 (Tex. Ct. App. 2011). Similar to Virginia, Texas courts also evaluate whether an individual had capacity at the time the documents were executed. *Kinsel v. Lindsey*, 526 S.W.3d 411, 419 (Tex. 2017). This determination may include looking to "state of mind at other times if it tends to show one's state of mind on the day a document was executed." *Id.*

The New York guardianship court analyzed the issue of Ms. Plofchan's capacity for purposes of deciding whether to appoint a guardian under the proper New York Mental Hygiene Law standard, not the Virginia trust or Texas power-of-attorney standard regarding capacity to execute or revoke those documents. The New York guardianship court did not even apply New York's standard regarding whether Ms. Plofchan had the capacity to execute documents; it only determined the narrow issue of whether she needed a guardian pursuant to the New York Hygiene Law. It found that she did not.

For collateral estoppel to preclude the litigation of an issue, it must be certain that the issue was actually litigated in a prior proceeding, and simply put, the issues of Ms. Plofchan's mental competency to revoke the POA or the Trust, and her mental competency at present, were not actually litigated in the New York guardianship court. The issue before the New York

10

guardianship court was whether an "appointment of a guardian was necessary to provide for [Ms. Plofchan's] personal needs or to manage [] her property and financial affairs." The New York guardianship court only evaluated Ms. Plofchan's capacity in that context and pursuant to the standard set forth in Article 81 of the Mental Hygiene Law. The New York guardianship court stated that it did not find that Ms. Plofchan was incapacitated, but its finding was limited only to that time and her mental capacity as defined in Article 81 of the Mental Hygiene Law.

The key inquiry, regarding Ms. Plofchan's mental capacity, in the action initiated by Thomas and Elizabeth is whether Ms. Plofchan had the mental capacity on the dates she signed the revocations of the POA and the Trust and presently, not whether she generally had the mental capacity to manage her affairs at the time of the guardianship hearing. Even if the New York guardianship court's order could be construed as ruling on Ms. Plofchan's mental capacity generally, it made no findings regarding her mental capacity on May 29, 2018, and August 21, 2018, the dates she attempted to revoke the POA and the Trust. Thus, the issues regarding Ms. Plofchan's mental competence, relevant to the instant lawsuit, were not actually litigated in the New York guardianship proceeding, and collateral estoppel does not preclude those issues from being litigated in this case. Therefore, the circuit court erred in sustaining Ms. Plofchan's plea in bar based upon collateral estoppel.

## B. Standing

Thomas and Elizabeth argue that they have standing to bring their action and that the circuit court erred in concluding otherwise. They assert that because Ms. Plofchan failed to present evidence to support her plea, the circuit court was required to accept the well-pled allegations in their complaint as true and that their complaint alleged sufficient facts to give rise

11

to standing. They aver that they not only had standing to bring the suit, but an obligation to do so to protect the Trust and Ms. Plofchan's assets.

Further, Thomas and Elizabeth also assert that even if the plea in bar was properly sustained regarding the bulk of their complaint, the circuit court erred in sustaining the plea in bar concerning their claim to recover fees and costs. They contend that even if Ms. Plofchan validly discharged them as fiduciaries, they still had the right to claim fees and costs incurred while serving in their representative capacity. Thomas and Elizabeth aver that to claim this right they had to appear before the court in the same capacity in which they held this right; in other words, they could not appear before the court as individuals to claim fees and costs incurred at a time when they served in fiduciary capacities. They claim that they were entitled to fees and costs for the time period they served in their fiduciary capacities.

Ms. Plofchan asserts Thomas and Elizabeth lack standing to bring their action and that the circuit court properly dismissed the action. She argues that she lawfully revoked the Trust and POA prior to the initiation of this suit, and the circuit court properly relied on the pleadings in concluding that she did so. Therefore, in her view, the circuit court correctly determined that the named plaintiffs lacked standing to sue.

Ms. Plofchan contends that Thomas and Elizabeth's argument that they can sue for fees incurred in their fiduciary capacity, prior to the revocation of the Trust, fails. She avers that the statute Thomas and Elizabeth rely on only allows fees and costs to be paid "*from* the trust that is the subject of the controversy;" thus, because the Trust had been dissolved prior to the commencement of their action, there was no way for the circuit court to award fees from the Trust.

12

The standard of review on appeal when considering a plea in bar is "functionally de novo" when the appellate court must consider solely the pleadings to resolve the issue presented. *Massenburg v. City of Petersburg*, 298 Va. 212, 216 (2019). When the circuit court takes no evidence on the plea in bar, we accept the plaintiff's allegations in the complaint as true. *Station #2, LLC v. Lynch*, 280 Va. 166, 169 (2010). No evidence was taken by the circuit court regarding the plea in bar ruled upon in this case.

"Broadly speaking, standing can be established if a party alleges he or she has a 'legal interest' that has been harmed by another's actions." *Howell v. McAuliffe*, 292 Va. 320, 330 (2016). Under Virginia law, trustees have the power to "[p]rosecute or defend an action, claim, or judicial proceeding in any jurisdiction to protect trust property and the trustee in the performance of the trustee's duties." Code § 64.2-778.

Here, Thomas and Elizabeth alleged that they were co-trustees of the Trust, that Thomas was Ms. Plofchan's attorney-in-fact, that Ms. Plofchan did not have the mental capacity to revoke her Trust or the POA, and that they, in their fiduciary capacities, were bringing suit to protect the assets and administration of the Trust. Taking these allegations as true, as the circuit court was required to do when ruling on a plea in bar without taking evidence, Thomas and Elizabeth have standing to bring the underlying action. Therefore, the circuit court erred in sustaining the plea in bar for lack of standing.

Relatedly, the circuit court also erred in dismissing Thomas and Elizabeth's claims for fees and costs they purportedly incurred in carrying out their fiduciary duties, because that ruling

13

was based upon the circuit court's erroneous determination that Thomas and Elizabeth did not have standing to bring those claims.[*]

### III. CONCLUSION

In sum, the circuit court erred in sustaining the plea in bar because collateral estoppel did not preclude Thomas and Elizabeth's presenting relevant evidence concerning their allegations regarding Ms. Plofchan's competence, and as pled, the allegations in their complaint established that they had standing to pursue the claims asserted in their complaint. Thus, the circuit court erred in granting the plea in bar and dismissing Thomas and Elizabeth's action. Accordingly, we will reverse the judgment of the circuit court and remand this case for further proceedings consistent with this opinion.

*Reversed and remanded.*

---

[*] We need not address Thomas and Elizabeth's third assignment of error in any greater detail because "the doctrine of judicial restraint dictates that we decide cases on the best and narrowest grounds available." *Henderson v. Cook*, 297 Va. 699, 710 (2019) (internal quotation marks omitted).