COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Huff, Malveaux and White
Argued at Norfolk, Virginia

ANTHONY SAHADEO

v.      Record No. 0333-23-1

CITY OF NORFOLK

MEMORANDUM OPINION[*] BY
JUDGE GLEN A. HUFF
JULY 2, 2024

FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Jerrauld C. Jones, Judge

(Joseph V. Sherman; Joseph V. Sherman, P.C., on briefs), for
appellant. Appellant submitting on brief.[1]

Adam D. Melita, Deputy City Attorney, for appellee.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] On January 5, 2024, the Clerk's office for the Virginia Court of Appeals sent an e-mail scheduling notice to counsel for all cases set for the February 21, 2024 Eastern Region docket. This e-mail was sent to the e-mail address Mr. Sherman provided in his opening brief. On January 31, 2024, the Clerk's office sent a follow up e-mail to counsel who had not responded to the January 5 notice, including Mr. Sherman. Both of these e-mails included a copy of the docket indicating this matter was scheduled for oral argument at 9:00 a.m. on February 21, 2024, in Norfolk, Virginia.

On February 21, 2024, Mr. Sherman failed to appear when this matter was called despite the notices. When contacted by the Clerk's office, via phone call, to ascertain his whereabouts, he claimed that he had not received notice of the hearing date and time. According to Mr. Sherman, his e-mail address changed after he filed his opening brief but before the Clerk's office scheduled the case for oral argument. The Clerk's office advised this Court that it had not received any notice of a change to Mr. Sherman's e-mail address. His outdated address produced neither a bounce back message nor automated forwarding message in response to the scheduling e-mails sent by the Clerk's office in January 2024. And Mr. Sherman did not contact the Clerk's office directly to update his contact information either.

Mr. Sherman requested a continuance in this matter, and counsel for the City of Norfolk objected. This Court denied Mr. Sherman's motion, determining that he had waived oral argument and was submitting on his brief, and heard argument from the City of Norfolk.

In July 2016, the City of Norfolk (the "City") demolished the residential building located at 1024 Tunstall Avenue after deeming it unsafe and uninhabitable. The City later sought judicial sale of the property in the Circuit Court for the City of Norfolk (the "trial court") to recover demolition costs and unpaid taxes. Anthony Sahadeo ("appellant"), the building's owner at the time of demolition, counterclaimed that the City took his property without due process in violation of Virginia law and the Constitutions of both the United States and Virginia.

Although appellant demanded a trial by jury for his state constitutional claims, the trial court denied that request as untimely. Prior to trial, the City moved for summary judgment on the due process claims and moved *in limine* to exclude references to the Uniform Statewide Building Code (the "USBC"). The trial court granted both motions and, following a bench trial, approved the City's request for judicial sale. On appeal, appellant challenges the trial court's denial of his request for a jury as well as the trial court's grant of the City's motion *in limine* and motion for summary judgment. Finding no error, this Court affirms the trial court's rulings.

BACKGROUND[2]

Having deemed 1024 Tunstall Avenue ("the building") unsafe and uninhabitable since at least 2013, the City sought to have the building either repaired or demolished.[3] In February 2015, appellant purchased the building with the intent to renovate it for use as low-income housing. On July 9, 2015, the City sent a letter to appellant informing him that the building was

---

[2] Under familiar principles of appellate review, "we view [the] evidence and all reasonable inferences in the light most favorable to the prevailing party below." *Ridenour v. Ridenour*, 72 Va. App. 446, 450 (2020) (alteration in original) (quoting *Pommerenke v. Pommerenke*, 7 Va. App. 241, 244 (1988)).

[3] The building's problems included: (i) loose, damaged, rotted, and missing siding; (ii) windows with frames that were broken, rotted, cracked, or otherwise deteriorated; (iii) broken, rotted, cracked, or otherwise deteriorated exterior doors; (iv) loose trim, brackets and molding that needed to be re-anchored to the cornice; (v) no water service; (vi) no electrical service; (vii) all windows were broken; and (viii) exterior studs from the first to second floor were deteriorated, bowed out, or missing.

unsafe and uninhabitable (a "notice letter") and that he needed to repair or demolish it by August 10, 2015. This letter was sent by certified mail, and the City received a signed return receipt; appellant later could not recall if he had received this letter.[4] The City did not take further action regarding the building until July 8, 2016, when the City's contractor demolished it.

On the day of the demolition, a neighbor informed appellant that the City was preparing to demolish the building. Appellant confronted the City's contractor before rushing over to City Hall to protest the demolition. After arriving at City Hall, appellant was informed that he could file for an injunction in court to stop the demolition. Appellant neither filed for an injunction nor took any other action to preserve the building. Consequently, the building was demolished that same day. The City then placed a lien on the property to recover the costs of the demolition and delinquent property taxes.

Two months after the demolition, appellant requested the City to provide him copies of all notices concerning the building. On August 23, 2016, the City provided appellant a series of 16 notice letters, dating back to 2014, including the one sent to appellant by certified mail in July 2015. Each letter notifies the recipient that they "have the right to appeal this notice and order by filing a written application to the Local Board of Building Code Appeals of the City of Norfolk." Such application for appeal, however, "must be filed within (14) days" after notice is served on the recipient, "[i]n accordance with the provisions of the USBC Part III, Section 106.5 . . . ." Appellant took no action regarding those letters.

On December 19, 2018, the City filed suit seeking a judicial sale of the property to recover $25,361.23 in delinquent property taxes and the demolition lien. Appellant filed an answer and counterclaim on January 24, 2019, alleging the following: violation of Code

---

[4] This letter was sent to a residential address in Virginia Beach, Virginia, not to the subject building. Appellant does not assert that the letter was sent to an improper address, only that he does not recall receiving it. The signature on the return receipt is illegible.

§ 15.2-906 (Count I), inverse condemnation under the Virginia Constitution (Count II), and inverse condemnation under the United States Constitution (Count III). The City demurred to each of appellant's counterclaims. On April 2, 2019, the trial court sustained the demurrer as to Counts I and III, with leave to amend, but overruled the demurrer for Count II.[5]

Appellant filed an amended counterclaim on April 4, 2019, to which the City demurred on April 22, 2019. On that same date, the City also filed an answer to Count II from appellant's initial counterclaim, which alleged that the City had taken and damaged appellant's property without paying just compensation.[6] As to the procedural due process claims—Counts I and III—appellant alleged that the City had failed to provide "reasonable notice of an opportunity to be heard before demolishing his building and taking his private property interests."

On June 20, 2019, the trial court overruled the City's demurrers to amended counterclaim Counts I and III, denied appellant leave to amend Count II, and ordered the City to respond to amended Counts I and III within 21 days. The City filed its answer to amended Counts I and III on July 10, 2019.

### Appellant's Jury Demand

Paragraph 12 of the City's answer to amended counterclaims Counts I and III states that "[t]he allegations in paragraphs 29 through 33 relate to a claim, identified as County [sic] Two, that was previously answered by the [City], which answer was accepted by the Court by order

---

[5] The order partially sustaining and partially overruling the demurrer was entered by the Honorable Junius P. Fulton, III, during his service on the Norfolk Circuit Court prior to his elevation to this Court.

[6] The City's demurrer and answer to the amended counterclaim referenced appellant's attempt to replead Count II without leave from the trial court. The City argued that the only version of Count II applicable in this action was from appellant's initial counterclaim. The trial court seemingly agreed, subsequently holding that the City's answer to Count II was *the* answer to Count II as pled in appellant's initial counterclaim, which appellant had not been permitted to replead in the amended counterclaim.

- 4 -

dated June 20, 2019." By that statement, the City reiterated that it was not raising any challenges to Count II not already contained in its April 22, 2019 answer, which the trial court had accepted on June 20, 2019. Nevertheless, on July 15, 2019—five days after the City filed its answer to the amended counterclaim—appellant filed his jury demand for "all issues so triable in this matter." The trial court denied appellant's request on February 11, 2022.[7]

#### The City's Motion for Summary Judgment

On April 20, 2021, the City moved for partial summary judgment on appellant's procedural due process claims—amended counterclaim Counts I and III. The City argued that appellant could not claim he was denied due process regarding the demolition of his property because he was actively litigating his inverse condemnation claims on that subject in court. To support that argument, the City primarily relied on the Fourth Circuit's opinion in *Presley v. City of Charlottesville*, 464 F.3d 480 (4th Cir. 2006).[8] Appellant responded that the Supreme Court's decision in *Lee v. City of Norfolk*, 281 Va. 423 (2011), precluded application of *Presley* and required the City to provide actual notice of a building code violation pre-deprivation. The trial court granted summary judgment, finding that *Lee* did not preclude the City's requested application of *Presley* and that in *Lee* there was no ability to bring an inverse condemnation claim whereas here appellant was actively litigating such a claim.[9]

---

[7] The trial court's order denied the jury request by amending a previously entered scheduling order from September 20, 2019, in which a different judge of the circuit court inexplicably granted a jury trial in this matter. Subsequently, on June 11, 2020, the judge presiding over this case issued an opinion letter explaining that appellant was not entitled to a jury trial and, even if he was, his jury demand was untimely. That letter opinion was incorporated by reference into the trial court's February 11, 2022 order denying appellant's 2019 request for a jury trial.

[8] In *Presley*, the United States Court of Appeals for the Fourth Circuit held that a post-deprivation inverse condemnation action provides sufficient due process for a purported Fourteenth Amendment taking.

[9] Appellant moved for reconsideration and interlocutory appeal; both were denied.

<u>The City's Motion *In Limine* to Exclude Reference to the USBC</u>

In advance of trial on appellant's remaining counterclaim—Count II—the City moved *in limine* on March 13, 2020, to exclude "any statement, document, or testimony regarding the extent of the City's compliance or noncompliance with any requirement of [the USBC]." The City reasoned that such references should be excluded because appellant had failed to undertake an administrative appeal alleging code violations in the City's letter notices. Because the evidence tended to show appellant had actually received the July 2015 notice letter, both before demolition and again two months later, the City argued that appellant's failure to pursue an administrative appeal should be deemed acceptance of the City's determination regarding the subject property. Appellant contended, in opposition, that he should be permitted to present evidence of the City's failure to comply with the USBC in order to explain why he did not appeal the City's inadequate notice letters.

The trial court granted the motion *in limine*, concluding that admitting evidence of the City's noncompliance with the USBC would "create[] a danger of unfair prejudice to the City that substantially outweighs its probative value because it would reward [appellant] for failing to use the remedy the USBC affords him." The trial court also reasoned that any potential violation of the USBC by the City did not automatically violate appellant's due process rights. Therefore, inclusion of the USBC evidence would risk confusing or misleading the trier of fact.

Appellant moved for reconsideration of the motion *in limine*, arguing that any administrative appeal contesting the City's determination as to the condition of the building would have been futile because the building had already been demolished. As such, appellant asserted that he was not required to undertake a futile administrative appeal in order to preserve his right to assert a due process claim in the trial court. The trial court denied appellant's motion

for reconsideration on July 7, 2020, concluding that evidence of the USBC was not relevant to the inverse condemnation claim.

In assessing appellant's futility argument, the trial court noted appellant's misplaced reliance on *Clear Sky Car Wash, LLC v. City of Chesapeake*, 910 F. Supp. 2d 861 (E.D. Va. 2012), a federal district court case interpreting federal law.  The trial court further held that even if *Clear Sky* applied to appellant's claim under the Virginia Constitution it would require appellant to make an administrative appeal unless a final agency decision previously declared a similar appeal futile.  Appellant did not identify any such decision applicable to the circumstances of this case.  For those reasons, the trial court concluded that "the City's compliance or noncompliance with the USBC is not properly before the Court.  Evidence related to that issue is immaterial, irrelevant, and therefore inadmissible pursuant to Virginia Supreme Court Rule 2:402(a)."

### Bench Trial

Following resolution of the above motions, this matter was heard in a three-day bench trial from January 17 to 19, 2023, to resolve the City's original action for a judicial sale of the building and Count II of appellant's counterclaim.  Based on the evidence presented, the trial court found that the building constituted a public nuisance and that its demolition was thus the taking of a blight.[10]  Further, the trial court explicitly found that appellant failed to establish the necessary elements of an inverse condemnation claim.  Regarding any compensation for such taking, the trial court relied on the City's evidence that the fair market value for the property was $0; appellant did not offer any evidence of an alternate value.

This appeal followed.

---

[10] Appellant has not challenged these findings on appeal.

ANALYSIS

Appellant assigns three errors to the trial court in this appeal. First, he alleges the trial court erred in denying his jury demand to counterclaim Count II because his demand was filed within 10 days of the last pleading directed to the issue. Next, he contends the trial court erred in granting the motions for summary judgment because it misapplied controlling case law. Finally, appellant contends that the trial court erred in granting the City's motion *in limine* to exclude evidence related to the USBC.

## I. Appellant's jury demand was untimely.

Appellant first contends the trial court erred in denying his demand for a jury trial because he properly filed his demand within 10 days of the City's answer to his amended counterclaim. The timeliness of appellant's jury demand "presents a mixed question of law and fact" that this Court reviews de novo. *Caplan v. Bogard*, 264 Va. 219, 225 (2002); *see also Uninsured Employer's Fund v. Gabriel*, 272 Va. 659, 662-63 (2006) ("We review questions of law de novo, including those situations where there is a mixed question of law and fact." (quoting *Westgate at Williamsburg Condo. Ass'n v. Phillip Richardson Co.*, 270 Va. 566, 574 (2005))). In doing so, "[w]e give deference to the trial court's factual findings and view the facts in the light most favorable to . . . the prevailing part[y] below." *Caplan*, 264 Va. at 225.

The Constitution of Virginia declares that "in controversies respecting property, and in suits between man and man, trial by jury is preferable to any other, and ought to be held sacred."[11] Va. Const. art. I, § 11. Code § 8.01-336 further enshrines the right to a jury trial by providing, with reference to the Constitution, that "[u]nless waived, any demand for a trial by

---

[11] This language largely tracks that originally drafted by George Mason in the June 12, 1776 "Declaration of Rights made by the Representatives of the good People of Virginia." *Bethel Inv., Co. v. City of Hampton*, 272 Va. 765, 769 n.2 (2006). The only change from the original language is the replacement of the phrase "the ancient trial by jury" with simply "trial by jury." *Id.*

jury in a civil case made in compliance with the Rules of Supreme Court of Virginia shall be sufficient, with no further notice, hearing, or order, to proceed thereon." Code § 8.01-336(A). This statute, however, also contemplates waiver of the right to a jury trial, stating that "unless one of the parties demands that the case or any issue thereof be tried by a jury . . . the whole matter of law and fact may be heard and judgment given by the court." Code § 8.01-336(B).[12] Reading these provisions together, Virginia law establishes that a litigant has a right to demand a jury trial "in controversies respecting property[] and in suits between man and man" but that such demand must be made according to the Rules of the Supreme Court. *See* Va. Const. art. I, § 11; Code § 8.01-336(A).

Specifically, to avoid waiving this right, a litigant's jury demand must comply with Rule 3:21(b), which permits a party to

> demand a trial by jury of any issue triable of right . . . by (1) serving upon other parties a demand therefore in writing at any time after the commencement of the action and not later than 10 days after the service of the last pleading directed to the issue, and (2) filing the demand with the trial court. Such demand may be endorsed upon a pleading of the party.[13]

In sum, a party need only serve its written demand for a jury on opposing counsel and the trial court within "10 days after the service of the last pleading directed to the [jury triable] issue." Rule 3:21(b).

---

[12] This subsection is written permissively, providing that "the whole matter of law and fact *may* be heard . . . by the court." Code § 8.01-336(B) (emphasis added). It is necessarily permissive because subsection C permits the trial court itself to demand a jury. *See* Code § 8.01-336(C) ("[I]n any action asserting a claim at law in which there has been no demand for trial by jury by any party, a circuit court may on its own motion direct one or more issues . . . to be tried by a jury.").

[13] Rule 3:21(b) also allows a party to make a jury demand in its complaint. As appellant here was the defendant below he did not file a complaint. Accordingly, this provision is not at issue here.

Under this framework, the 10-day time limit for making a jury demand starts on the date of "service of the last *pleading directed to the issue*." Rule 3:21(b) (emphasis added). Compliance with the rule therefore requires an understanding of what "pleading" and "directed to the issue" mean. In the broadest sense, there are two types of pleadings. First, "[p]leadings are the allegations made for the purpose of definitively presenting the issue or issues to be tried and determined." *Burch v. Grace Street Bldg. Corp.*, 168 Va. 329, 341 (1937). They are "[t]he successive statements, now usually written, by which the plaintiff sets forth his cause and claim, and the defendant his defense." *Baylor v. Commonwealth*, 190 Va. 116, 121 (1949). Second, "[a]ll motions in writing, including a motion for a bill of particulars and a motion to dismiss, whether filed in paper document format or as electronic or digitally imaged filings, are pleadings." Rule 3:18(a). Because "[t]he issues in a case are made by the pleadings," regardless of whether raised in the form of a complaint or a motion, "the judicial tribunals, in determining the respective rights of litigants, cannot go beyond the issues thus made." *Potts v. Mathieson Alkaki Works*, 165 Va. 196, 223 (1935). Simply put, the pleadings are the written submissions by which a party defines and presents it arguments to the court.

Turning next to the phrase "directed to the issue," this Court recognizes that the verb "direct"—past tense "directed"—means "[t]o aim (something or someone)"; "[t]o cause (something or someone) to move on a particular course"; "[t]o guide (something or someone); to govern"; "[t]o instruct (someone) with authority" or "[t]o address (something or someone)." *Direct*, *Black's Law Dictionary* (11th ed. 2019). These definitions all contemplate a particular target—something or someone—as well as progress or movement towards the target. In the full context of Rule 3:21(b), the target is the issue(s) or defense(s) raised in the pleadings. Accordingly, the entire phrase "last pleading directed to the issue" refers to a written submission—the pleading—which raises, establishes, progresses, or advances an "issue" or

defense before the court. Only within the 10 days after service of such pleading may a party serve a timely demand for a jury. Rule 3:21(b). Furthermore, the pleading triggering the 10-day time limit must be "directed to the issue" for which the subsequent jury demand is made. Rule 3:21(b). Therefore, under this rule, the "last pleading directed to the issue" may significantly pre-date the final pleading made in advance of trial if the latter is not "directed to the issue" in accordance with Rule 3:21(b). Indeed, it is the existence of that circumstance which renders appellant's jury demand in this case untimely.

Appellant served his jury demand for "all issues so triable in this matter" on July 15, 2019, only five days after the City filed its answer to appellant's amended counterclaim. As a result, appellant's request for a jury trial was timely as to any issues or defenses raised in the City's July 10, 2019 answer to the amended counterclaim. By the very language in that answer, however, the City raised new defenses to only Counts I and III, which had been amended with the trial court's permission after the City's demurrers to Counts I and III in appellant's initial counterclaim were sustained on April 2, 2019. Notably, the City did not raise any issues or defenses relating to Count II in the July 10 answer because the trial court had not granted appellant leave to replead Count II in the amended counterclaim. The City raised this very argument preemptively in its July 10 answer, stating in paragraph 12 that it continued to rely on its April 22 answer to Count II, which had been accepted by the trial court on June 20, 2019, at the same time that the trial court denied appellant leave to amend Count II. Indeed, the City plainly stated in paragraph 12 that it was relying on a previous filing which had been accepted by the trial court. Accordingly, the City's July 10 answer cannot be considered a "pleading directed to" Count II because it did not raise any issues, defenses, or otherwise apprise the trial court of a new position on that claim; instead, the City merely identified the issues and defenses previously raised in its April 22 answer, noting its intent to rely on that which was already filed.

- 11 -

Consequently, for purposes of Rule 3:21(b), the City's "last pleading directed to the issue[s]" in Count II was its April 22, 2019 filing, which included both a demurrer to appellant's amended counterclaim as a whole as well as an answer to Count II as pleaded in appellant's initial counterclaim. Therefore, appellant's jury demand as to Count II was untimely when served on July 15, 2019, and the trial court did not err in denying appellant's request.

II. Appellant's procedural due process claims were properly dismissed via summary judgment.

Appellant next assigns error to the trial court's grant of summary judgment on amended counterclaim Counts I and III. He contends that the City's demolition of the building amounted to an uncompensated taking and that he was denied due process under the United States Constitution. The City justified the demolition and subsequent compensatory lien under its power to abate public nuisances.

This Court reviews grants of summary judgment de novo, "applying the same standard a trial court must adopt in reviewing a motion for summary judgment, accepting as true those inferences from the facts that are most favorable to the nonmoving party, unless the inferences are forced, strained, or contrary to reason." *Fultz v. Delhaize Am., Inc.*, 278 Va. 84, 88 (2009). "Once it is determined that due process applies, the question remains what process is due." *Klimko v. Virginia Emp. Comm'n*, 216 Va. 750, 756 (1976) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). In considering what process is due:

> three considerations must be balanced: (1) the private interest at stake; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Commonwealth's interest, including the function involved and the

> fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Jackson v. W.*, 14 Va. App. 391, 411-12 (1992). "Under this balancing test, we weigh the competing interests of the government and the private party and consider the value and cost of requiring additional procedures." *Id.* at 412. The United States Supreme Court has repeatedly held that "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey*, 408 U.S. at 481.

Appellant's principal argument that he was denied due process relies on the trial court's reliance on *Presley*, 464 F.3d 480, which appellant alleges is precluded by the Supreme Court's decision in *Lee*, 281 Va. 423.

In *Presley*, the City of Charlottesville mapped a hiking trail across Presley's property. 464 F.3d at 482. Presley installed a razor wire barrier to protect her property, and the City of Charlottesville responded by passing an ordinance prohibiting the use of such barriers. *Id.* at 483. The City of Charlottesville then brought criminal charges against Presley for violating the newly passed ordinance. *Id.* The district court dismissed Presley's claim that the City of Charlottesville had denied her procedural due process rights. *Id.* The Fourth Circuit affirmed, finding that "[u]nder Virginia law, aggrieved property owners may file an inverse condemnation action pursuant to Virginia's declaratory judgment statute." *Id.* at 490 (citing *Richmeade, L.P. v. City of Richmond*, 267 Va. 598 (2004)). "If [an aggrieved property owner] prevail[s] [in the declaratory judgment action], they may obtain a court order requiring that the relevant governmental body comply with Virginia's established procedures for determining

- 13 -

compensation." *Id.* (citing Code § 8.01-187).[14]  Lastly, the Fourth Circuit concluded that no

notice or pre-deprivation hearing is required because the inverse condemnation claim provides

adequate process to protect a landowner's interests.  *Id.* at 490-91.

In *Lee*, the Supreme Court of Virginia considered the failure to pursue an administrative

appeal prior to the demolition of a building after it was declared a nuisance by the City.  *See Lee*,

281 Va. 423.  The building owner in *Lee* received notice that his property was declared a

nuisance, that he had 21 days to administratively appeal that determination, and that failure to

make such an appeal would constitute acceptance of the decision.  *Id.* at 428-29.  After failing to

make an administrative appeal within the 21 days—resulting in his building's demolition—Lee

filed suit alleging a deprivation of property without due process.  *Id.* at 430.  The circuit court

dismissed that claim on the City's demurrer, and the Supreme Court granted the Lee's petition

for further review.  *Id.*

On appeal, the *Lee* Court first considered the application of *Presley* and stated that it

would "not address whether, as a general principle, upon a taking for public use the availability

of a post-deprivation inverse condemnation action by statute affords an aggrieved landowner due

process of law."  *Id.* at 434 (citing *Presley*, 464 F.3d at 490).  The Court then found that the

destruction of Lee's property constituted an abatement of a nuisance under the City's well

established police power.  *Id.*  Accordingly, "even if a post-deprivation hearing would satisfy due

---

[14] Code § 8.01-187 provides:

> Whenever it is determined in a declaratory judgment proceeding
> that a person's property has been taken or damaged within the
> meaning of Article I, Section 11 of the Constitution of Virginia and
> compensation has not been paid . . . , the court which entered the
> order or decree may, upon motion of such person after reasonable
> notice to the adverse party, enter a further order appointing
> commissioners or condemnation jurors to determine the
> compensation.

process, Lee was not entitled to such a hearing because there was no compensable taking." *Id.*

Simply put, the Court did not reach the question of sufficiency of a post-deprivation hearing on a

due process claim because the abatement of a nuisance is not a taking under the Fourteenth

Amendment of the United States Constitution.

Here, appellant argues the Court in *Lee* "found no *per se* rule that inverse condemnation

provides sufficient process to defeat a due process claim." Appellant is correct insofar as the

Court *did not* make such a finding; neither, however, did it make any finding to the contrary.

Rather, it declined to address that question at all and instead resolved the matter on other,

narrower grounds. *Id.* at 434; *see also Butcher v. Commonwealth*, 298 Va. 392, 396 (2020) ("As

we have often said, 'the doctrine of judicial restraint dictates that we decide cases "on the best

and narrowest grounds available."'" (quoting *Commonwealth v. White*, 293 Va. 411, 419

(2017))).[15] Accordingly, this Court cannot say either that the trial court here misapplied *Presley*

or that *Lee* necessarily controls the outcome of this case. Rather, those two decisions can be read

together harmoniously for the proposition that a locality may properly take property to abate a

nuisance and the availability of an inverse condemnation action supplies the necessary due

process. *See Lee*, 281 Va. at 434-35; *Presley*, 464 F.3d at 490.

Having determined the compatibility of *Lee* and *Presley*, this Court cannot say appellant

was deprived of due process. Applying the *Jackson* factors, this Court must look at

> (1) the private interest at stake; (2) the risk of an erroneous
> deprivation of such interest through the procedures used, and the
> probable value, if any, of additional or substitute procedural
> safeguards; and (3) the Commonwealth's interest, including the
> function involved and the fiscal and administrative burdens that the
> additional or substitute procedural requirement would entail.

---

[15] "The 'best' answer to a legal question is the one with which the least number of jurists would disagree or, in other words, the one with which the greatest number of jurists would agree. The 'narrowest' answer to a legal question is the one affecting the least number of cases." *Butcher*, 298 Va. at 396.

14 Va. App. at 411-12. First, the interest here, that in private property, is among the most zealously guarded interests. So guarded in fact, that when it is violated the offended party may come to court and seek just compensation—just as appellant did here. Second, here there is no risk of erroneous deprivation of the interest through the procedures used because appellant is actively in court seeking to vindicate his interest. Indeed, he is actively availing himself of the process while complaining of lack of process. Finally, the process used here is the maximum possible safeguard because the government has been haled into court to defend its actions in an adversarial proceeding. Reviewing this record de novo, this Court affirms the trial court's grant of summary judgment because appellant received all the process he was due in this matter.

As the trial court stated below, an inverse condemnation claim was "not only theoretically possible, *but is being actively litigated*." Because the trial court did not misapply *Presley*, and because appellant received the process he was due, the trial court did not err in granting the City's motion for summary judgment.

III. References to the USBC were properly excluded from trial.

Finally, appellant argues that the trial court erred in granting the City's motion *in limine* to exclude references to the USBC. "This Court reviews 'a circuit court's decision to admit or exclude evidence under an abuse of discretion standard and, on appeal, will not disturb a circuit court's decision to admit evidence absent a finding of abuse of that discretion.'" *Lambert v. Commonwealth*, 70 Va. App. 740, 749 (2019) (quoting *Herndon v. Commonwealth*, 280 Va. 138, 143 (2010)). "In evaluating whether a trial court abused its discretion, . . . '[this Court does] not substitute [its] judgment for that of the trial court. Rather, [this Court] consider[s] only whether the record fairly supports the trial court's action.'" *Id.* (alterations in original) (quoting *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009)). "Only when reasonable jurists could not differ can

we say an abuse of discretion has occurred."[16] *Thomas v. Commonwealth*, 44 Va. App. 741, 753, *adopted on reh'g en banc*, 45 Va. App. 811 (2005).

"As a general principal, evidence that tends to prove a matter which is properly at issue in a case is generally admissible." *Anderson v. Anderson*, 29 Va. App. 673, 681 (1999); *see* Va. R. Evid. 2:402(a) ("All relevant evidence is admissible."); *Payne v. Commonwealth*, 65 Va. App. 194, 217 (2015) ("Evidence must be relevant to be admissible."). "[Evidence] is relevant if it has 'any tendency to make the existence of any fact in issue more probable or less probable than it would be without the evidence.'" *Payne*, 65 Va. App. at 217 (quoting Va. R. Evid. 2:401). "Such evidence 'should be excluded only when its probative value is outweighed by policy considerations which make its use undesirable in the particular case.'" *Anderson*, 29 Va. App at 681 (quoting *Farley v. Commonwealth*, 20 Va. App. 495, 498 (1995)). "Responsibility for evaluating whether the probative value of evidence is outweighed by policy considerations mitigating against admissibility rests within the discretion of the trial court." *Id.*

The trial court here considered the City's motion *in limine* to exclude reference to the USBC twice: first in response to the City's motion and then again on appellant's motion to reconsider. In its initial order granting the motion *in limine*, the trial court concluded that "admitting [evidence of the City's noncompliance with the USBC] creates a danger of unfair prejudice to the City that substantially outweighs its probative value because it would reward [appellant] for failing to use the remedy the USBC affords him." Because appellant did not appeal the City's decision in compliance with the USBC's procedures, he cannot now challenge the City's own compliance with the USBC. The trial court also reasoned that any potential

---

[16] A trial court can also err when it makes a mistake of law. *See Auer v. Commonwealth*, 46 Va. App. 637, 643 (2005).

violation of the USBC by the City does not automatically violate appellant's due process rights. Therefore, inclusion of the USBC evidence would risk confusing or misleading the trier of fact.

In denying appellant's motion to reconsider the grant of the motion *in limine*, the trial court concluded that evidence of the USBC was not relevant to an inverse condemnation claim. The trial court reasoned that "the City's compliance or noncompliance with the USBC is not properly before the Court. Evidence related to that issue is immaterial, irrelevant, and therefore inadmissible pursuant to Virginia Supreme Court Rule 2:402(a)."

As discussed above, this Court affirms the trial court's grant of summary judgment as to Counts I and III. Accordingly, this Court cannot say the trial court abused its discretion in granting the motion *in limine* where the City's alleged violations of the USBC had no bearing on the remaining trial issues.[17] Appellant admits that he intended to reference the USBC at trial only to contest the City's compliance with the USBC's notice requirements. Insofar as the USBC is implicated in this case, the trial court had already granted summary judgment for the City on appellant's statutory remedy claims, thereby precluding such evidence relevant only to that claim from being introduced at trial on a separate claim. Further, as the trial court expressly held, compliance with the USBC is wholly irrelevant to appellant's inverse condemnation claim; as a result, any reference to violations of the USBC during trial on counterclaim Count II would

---

[17] Indeed, the City's brief here correctly states that appellant's "appeal to this Court cannot succeed unless his due process claim is revived." The City's compliance, or lack thereof, with the USBC is only relevant if appellant's federal procedural due process claim (Count III) is remanded for trial.

- 18 -

likely prove confusing to the fact finder.[18]  Pursuant to the well-established principle that evidence must be relevant to be admissible, this Court affirms the trial court's grant of the City's motion *in limine* because evidence relating to the USBC was not relevant to any of the issues still pending before the court at that time.

CONCLUSION

Appellant sought this Court's review of the timeliness of his jury demand, the grants of summary judgment for the City on his due process claims, and the exclusion of USBC evidence. Appellant's jury demand was not timely as to Count II of the counterclaim because the demand occurred more than 10 days after the last pleading directed to that issue.  Further, the trial court did not err in its conclusion that *Lee* does not prevent the application of *Presley*, and nevertheless appellant was actively receiving all the process due as he actually litigated this matter.  Finally, because the due process challenges were dismissed on summary judgment, the exclusion of USBC evidence was proper as the compliance or alleged lack thereof with the USBC was not relevant to the remaining matters before the trial court.  For these reasons, this Court affirms the trial court's judgment.

*Affirmed*.

---

[18] This matter was tried to the bench.  "[A] trial judge[] sitting as a fact finder . . . is uniquely suited by training, experience, and judicial discipline to disregard potentially prejudicial [evidence]." *Adjei v. Commonwealth*, 63 Va. App. 727, 739 (2014).  Accordingly, during a bench trial there is a reduced risk to admitting prejudicial evidence.  Nevertheless, this Court reviews a trial court's decision to exclude evidence for an abuse of discretion and cannot say that a trial judge abuses its discretion to exclude evidence merely because the trial judge presumptively could have disregarded the prejudicial evidence.